## CROVATT *v.* MASON.

1. An act of the General Assembly which renders councilmen and aldermen of the cities and towns of this State incompetent to hold any other municipal office during the time for which they were chosen, is not unconstitutional because by its terms such act is made applicable only to cities and towns of two thousand inhabitants or more ; but the same is a general act, and as such is applicable to all towns and cities within the State falling within the designated class at the time of its passage, or which may do so thereafter.

2. The office of mayor of a city or town having more than two thousand inhabitants is a municipal office within the meaning of such act.

3. An act amending an existing charter of a municipal corporation, which provides that "the mayor and aldermen shall hold their office for two years, or until their successors are elected and qualified," fixes the terms of such officers at two years. The *term* of one of such officers is not reduced or changed by his resignation of the office and the election of his successor before the expiration of two years from the beginning of such term.

4. An application for leave to file an information in the nature of a writ of quo warranto, to inquire into the right of a person to hold the office of

mayor of a city, the duties of which such person is in fact discharging, will be granted at the instance of any other person who either claims the office or is interested therein. If, however, the facts upon which a claim to the office is based are set forth and on their face show that the claim is not well founded, the application, so far as it rests upon this ground, is not sustainable.

5. A defeated candidate for the office, whether he does or does not claim the same, if a citizen of the city, has such an interest in the office as will entitle him to have the application granted in a proper case made.

6. Where such an application is made by a relator who predicates his prayer on two grounds, viz.: 1st, that the person receiving the highest number of votes was ineligible to hold the office, and that the relator, being eligible, received the next highest number of votes, and for this reason he claims such office; and, 2d, that the relator is a citizen of such city and of the State and county in which the same is situated, and as such citizen has an interest in such office: the first of these grounds affords no cause for granting the relief sought, because the claim to the office, considered in the light of the facts on which it is based, is without merit, in that it fails to show any right on the part of the applicant to have and exercise the duties and prerogatives of the office; but the second ground based on citizenship and consequent interest in the office, taken in connection with the alleged ineligibility of the incumbent of the office, makes a case entitling the applicant, in his capacity as citizen, to an order granting leave to file the information.

Argued April 21, — Decided May 21, 1897.

Petition for quo warranto. Before Judge Sweat. Glynn county. February 4, 1897.

Crovatt presented his petition praying for leave to file the same as information in the nature of a writ of quo warranto, claiming that in law he was the duly elected mayor of the city of Brunswick, and that Mason was illegally holding the office. Upon the hearing the prayer was denied, and Crovatt excepted. The case was submitted to the judge upon an agreement as to the facts, from which the following appears:

At the annual election for aldermen for the city, held on the second Saturday in December, 1895, Mason was elected an alderman and member of the city council for the term established by law. He qualified as such, and was chosen by the council as its chairman, and continued in the discharge of the duties of that office until December 23, 1896. Previously, on the second Saturday of that month, an election was legally held for mayor and four aldermen for the city for the term established by law, commencing on the first Monday in January,

1897, at which election Mason and Crovatt were candidates for the office of mayor, receiving respectively 443 and 123 votes, and the managers of the election declared Mason duly elected to the office of mayor. On the 23d of the same month, at a meeting of the mayor and council, Mason tendered his resignation of his unexpired term as alderman, which was accepted and approved by the mayor and council; and on December 30th, Butts was elected alderman to succeed Mason, and qualified as such. Afterwards, on the first Monday in January, 1897, Mason took the oath of office as mayor for the term fixed by law, beginning on that day, and has since been in possession and enjoyment of the office, discharging its duties. The agreed facts include and refer to the general statutes of the State, and the law applicable to such cases, the several acts of the legislature incorporating the city of Brunswick, and the acts amendatory thereof, being acts of August 27, 1872, November 12, 1889, and December 23, 1892. The relator contends that for the period of two years after the first Monday in January, 1896, Mason, having been elected an alderman for that term, is ineligible to be elected to and hold the office of mayor.

*Crovatt & Whitfield* by *Glenn & Rountree* and *J. A. Noyes,* for plaintiff.   *Brantley & Bennet,* for defendant.

LITTLE, J.   The official report states the facts.

The application for leave to file information in the nature of a writ of quo warranto, which was made in this case, was denied generally, by the judge of the Brunswick circuit. We reverse that judgment, and in doing so have considered all the grounds which were urged here, both by the briefs and in the argument in support of the judgment rendered below, as well as the objections urged thereto by the plaintiff in error; and will now give the conclusions to which such consideration led.

1. It is contended by the plaintiff in error, that the defendant was ineligible to hold the office of mayor of Brunswick on December 12, 1896, the date at which the regular election was held, and that such ineligibility was caused by the following facts: that on the 2d Saturday in December, 1895, the de-

fendant was elected an alderman of the city of Brunswick for and during a term of two years, commencing on the 1st Monday in January, 1896; that he qualified, and was filling the said term as alderman of Brunswick at the date of the regular election in 1896; that the term for which he was elected alderman did not expire until the 1st Monday in January, 1898; that under the laws of Georgia he was not eligible to the office of mayor of Brunswick during the term for which he was elected alderman, and is therefore not entitled to hold the office of mayor, for which office he was a candidate and received a majority of the votes on December 12, 1896.

To this contention, it is replied by the defendant, that, by the provisions of an act to consolidate and amend the several acts incorporating the city of Brunswick (Acts of 1872, page 151), it is provided that all male persons, citizens of the United States, who have resided six months in the State and thirty days immediately preceding the election in the corporate limits of Brunswick, have registered, attained the age of twenty-one years, and paid all taxes legally demanded, etc., shall be qualified to vote for mayor and aldermen, and that any person legally entitled to vote for those officers, and who shall have actually resided twelve months previous to the election in said city, was and is eligible to the office of mayor or alderman; that the respondent was qualified under this act to hold the office of mayor; and that the act of 1895, as well as the act of 1889 of which it is amendatory, and which are relied on by the plaintiff as establishing the ineligibility of the defendant, are unconstitutional and void, because they except from their operation towns of less than two thousand inhabitants, and are not, therefore, general laws.

The provisions of the act of 1889 (Acts 1889, p. 181) as amended are incorporated in Acts of 1895, page 79, which reads as follows: "Section 1. That from and after the passage of this act, the councilmen and aldermen of the towns and cities of this State shall be incompetent to hold, except in towns of less than two thousand inhabitants, any other municipal office in said towns and cities during the time for which they are chosen; *provided*, that nothing herein contained shall apply to

any municipal office which is to be filled by appointment by the mayor; *provided further*, that nothing in this act shall be so construed as to allow any one person to hold more than one municipal office at any one time, but any councilman or alderman appointed during his term to any other municipal office shall resign his position as councilman or alderman before he shall be eligible to enter upon the duties of the appointed office." The objection urged to this act is, that by its provisions an entire class is excepted and the excepted class is left without any law on the subject, and being so the act is not general in its nature, and must be obnoxious to the constitutional provision, in that it is so limited as not to have uniform operation throughout the State ; and the case of *Mathis* v. *Jones*, 84 *Ga.* 804, is cited to support the proposition that general laws "can not be deprived of their force in one part of the State without simultaneously depriving them of force in every other part." The proposition is sound and the authority good, but the application is the fault of the argument as we view it. A law which has uniform operation throughout the State must be a general law as contemplated by our constitution, and quoting from Chief Justice Bleckley in the case cited supra, "A law may take its general nature either from its territorial comprehensiveness or from the nature of its subject-matter, or from both. A law may be. of a general nature notwithstanding its subject-matter is of a local nature, its general nature being due alone to its territorial comprehensiveness. A law which is general by reason of its territorial comprehensiveness only, can no more be limited in its operation territorially by a subsequent special law than one which is general in the nature of its subject-matter." The contention of the respondent in this case would seem to require that a law to be general must be universal in its operation. It will be noted that our constitution only requires it to have *uniform* operation; that is, to apply to *all* persons, matters or things which it is intended to affect, to operate on all which come within the scope of its provisions alike, that is uniformly. Uniform does not mean universal. 17 Cal. 547. The constitution is complied with in this respect, when the law operates uniformly upon all persons who are brought within

the relations and circumstances provided by it.   20 Iowa, 338. And a law is general, under the constitution of Georgia, when it operates uniformly throughout the whole State upon the subject with which it purposes to deal.   *Lorentz & Rittler* v. *Alexander*, 87 *Ga.* 444.   If it excepts one or several of those subjects or classes of subjects, it is not general.   A statute relating to persons or things as a class is a general law.   40 N. J. L. 123; 77 Penn. St. 338.   The application of this principle has been directly ruled by this court in construing the statutes of this State, in *Bone* v. *The State*, where the act construed authorized the superior court to sit in two sections, in counties of this State in which there were cities of ten thousand inhabitants or more. 86 *Ga.* 108.   The court there held that the General Assembly had the power to make such classification.

The plain meaning of the act of 1895 is, that councilmen and aldermen of all cities and towns in this State, having two thousand or more inhabitants, shall be incompetent to hold any other municipal office in such town or city during the time for which they were chosen such councilmen or aldermen. The class of subjects with which this act intends to deal is aldermen and councilmen of all cities and towns in the State which have two thousand or more inhabitants.   Aldermen in a town or city of less than two thousand inhabitants are not within the scope of the act.   They are not of the class brought under its provisions.   The act is general in its terms as applying to all cities and towns in the State having two thousand inhabitants or more.   None are excepted; and while the statute is in force, ex vi termini, all towns and cities which come into the enumerated class will be affected by the act.   It is a classification by population for the purpose of general legislation.   As the act operates uniformly upon all cities and towns throughout the State which are included and come into the class concerning which the legislation is had, we hold the act to be a general law.   Nor do we think that the contention of the respondent that the special act declaring what persons are eligible to the offices of mayor and aldermen of the city of Brunswick is not modified by the general act of 1895, is sound.   True, under the act of 1872, consolidating the laws

incorporating Brunswick, an alderman was eligible to the office of mayor; but the general act of 1895 is the declared policy of the State as to all cities in Georgia, including Brunswick. It was the legislative act which created the municipal corporation of Brunswick and prescribed how and the manner in which the offices of the corporation should be filled; having done so, it remained in the power of the legislature to change that method at will; and we know of no reason why this can not be legitimately done by a general statute declaring and fixing the policy of the State in all cities and towns of a certain class, which embraces that municipal corporation. But it is said, repeals by implication are not favored. This is correct as a legal proposition; but it must be noted, in applying it to this case, that the terms of the special act applicable to the city of Brunswick alone are *necessarily* in conflict with the provisions of the act of 1895, which were enacted to apply to all cities of the State of the class in which Brunswick comes; and while ordinarily a general law does not repeal a prior local law unless the latter be specially named or necessarily embraced in the terms used, yet where it is apparent from the act itself that it was intended to embrace the special or local law, the latter will be held to be modified or repealed thereby. *Swift* v. *Van Dyke*, 98 *Ga.* 725. See also *Pausch* v. *Guerrard*, 67 *Ga.* 319; *Mayor of Montezuma* v. *Minor*, 70 *Ga.* 191. The terms of the general act are clearly repugnant to the special law; the two are so irreconcilably inconsistent as that both can not stand. The general act manifestly intended to include Brunswick in its operation, and a modification of the terms of the special act must result. In Sutherland on Statutory Construction, pages 213, 214, the text, amply supported by adjudicated cases, says: "There is no rule of law which prohibits the repeal of a special act by a general one, nor is there any principle forbidding such repeal without the use of words declarative of that intent. The question is always one of intention, and the purpose to abrogate the particular enactment by a later general statute is sufficiently manifested when the provisions of both can not stand together. . . The intention to except from such a law those which have special

laws will not be imputed to the legislature when such exception would render the law unconstitutional, and it is framed broad enough to embrace the entire class to which it relates."

We are clear therefore that the act of 1889 and amending act of 1895 did modify the act consolidating the acts incorporating Brunswick, and that the terms of these acts applied to the election for mayor and aldermen of Brunswick, held in December, 1896.

2. The respondent to the application submits here the proposition that the office of *mayor* was never intended to be included and is not included in the words "other municipal officers," as used in the act of 1889 and the amending act of 1895. The words "other municipal officers," as used in the act, are put in opposition to councilmen and aldermen. These by the act are recognized as municipal officers—municipal officers *other* than *aldermen and councilmen* the act refers to. An alderman is one of a board of municipal officers next in order to the mayor, and mayor is the *chief officer* of a municipal corporation. Webster Int. Dict. *Title, Alderman, Mayor.* The mayor is not only a municipal officer, but he is the *chief* municipal officer highest in grade, and the head of the municipal government. The act vests municipal authority and control in the "mayor and aldermen"; they take the same oath, section 5, act of 1872. We can not doubt that the office of mayor is embraced in the phrase "other municipal office," when used in the act.

3. It is further contended by the respondent, that as the act of 1892 ( page 215, section 7 ), in fixing the term of office of the mayor and aldermen, declares that these officers "shall hold their offices for two years, *or* until their successors are elected and qualified," the term is not fixed at two years, but by the use of the disjunctive, *or*, the term expires whenever his successor is elected and qualified; that the respondent in this case assumed the aldermanic office on the first Monday in January, 1896, for two years, *or* until his successor should be elected and qualified; that he resigned such office on December 23, 1896, and his successor was elected and qualified December 30, 1896, and that when he assumed the office of mayor on the first

Monday in January, 1897, his term as alderman had expired, under the statute, and he was eligible to hold the office. The able counsel presenting this view supports it by invoking the principle that the manner of appointment and qualification of municipal officers and the duration of terms of office as prescribed *must be strictly complied with.* To this we assent. The word "term," when used in reference to the tenure of office, means ordinarily a fixed and definite time (Mechem, Public Officers, page 385); and upon the expiration of the officer's term, unless he is authorized to hold over, his rights, duties and authority as such must ipso facto cease. Ib. § 396. It is usually provided by law that officers elected for a fixed term shall hold not only for that term, *but* until their successors are elected and qualified. When no such provision is made, the question of the right to hold over is not so clear; but the prevailing opinion in this country is, that unless such holding over is prohibited the incumbent may continue to hold until his successor is elected and qualified. The reason given is, that there would otherwise frequently be cases where, from failure to elect or refusal to qualify, the office would be vacant and the public service suspended. Ib. §§ 396–397. Throop on Public Officers, chap. 14. By the act of 1892 supra, the term of an alderman of the city of Brunswick is fixed at two years, and such is the *time*, under that act, for which he is elected; clearly so. If the disjunctive *or* is to be regarded as limiting the term, then whenever an alderman resigned, his term was ended and his successor would begin a new term of two years when he qualified; but reference to last paragraph of section 7 of the act will show that no such construction was intended to be given to the use of the conjunction "or." It is there declared that if a vacancy occurred, an election to fill such vacancy for such *unexpired term* should be held, not by the people, as in the case of an original term, but by the *mayor and aldermen* in council assembled. It is apparent that the provision, "or until his successor is elected and qualified," does not reduce or change the term for which the officer is elected, but the meaning of such phrase is to extend the time in which he may hold the office beyond his term to a period when the

office is filled by another who has been elected and qualified.

The act of 1895, in declaring councilmen and aldermen incompetent to hold any other municipal office, uses the words, "during the *time* for which they are chosen." "Two years *or* until his successor shall be elected and qualified," means that the time for which an officer is chosen under that regulation is two years. If an officer after his election resigned, such resignation could not affect the *time* for which he was chosen; so we hold that, under the act of 1892, the regular term of office of the aldermen of Brunswick is two years, and at a regular election held under that act for the election of such officers for the city, they are chosen for a term of two years.

4. An application for leave to file an information in the nature of a writ of quo warranto, to inquire into the right of a person exercising the duties of the office of mayor of a city, will be granted at the suit of some person either claiming the office or interested therein. Civil Code, § 4878. When the application is based on the claim of the relator to the office, it must be shown that such claim is bona fide made; and if the facts are set forth upon which the relator bases his claim, so that the question presented be one of law, the court will in the exercise of its judgment pass upon the legal effect of the claim as made, and grant or refuse the leave to file the information. It would be an act of supererogation to grant the application where the relator files it on the sole ground that he was entitled to the office, when the law, as applied to the facts set forth, negatived such claim.

Granting or refusing the application rests in the sound discretion of the court. Mechem's Pub. Off. § 480; Throop on Pub. Officers, § 781. And he, if a private person, must show affirmatively upon his application that he has at least prima facie the better title. *Collins* v. *Huff,* 63 *Ga.* 207.

5. It is not a condition precedent to granting the leave to file the information on the application of a private person, that the relator shall show himself entitled to the office, but the proceeding is the proper and appropriate remedy for trying and determining the title to the office, and ascertaining who is entitled to hold it; *also* of removing an incumbent who has

usurped it—one who claims by an invalid election, as well as one who illegally holds it after the expiration of his term. Mechem's Pub. Off. § 478, and authorities cited in note 2. It is not essential to the jurisdiction, that a person is to be put in possession of the office; it suffices that a person holding office unlawfully is to be ousted. Throop on Pub. Off. § 778. In the case of *Davis* v. *City Council of Dawson*, 90 *Ga.* 817, this court held in terms, that a defeated candidate has such an interest in the office, though not claiming it, that he might dispute the result of the election and proceed to have the election set aside and the office declared vacant.

6. The relator in this case based his application for leave to file the information on two grounds: First, that Mason, who is filling the office of mayor and received the highest number of votes therefor, was incompetent to hold and ineligible under the law to said office when the election was held, and now; that at said election relator was a candidate and eligible to said office of mayor, and having obtained a majority of votes cast for any candidate eligible to hold the office of mayor, he claims that he was elected to said office, and by virtue of such election he is entitled to be sworn in and serve as mayor for the term ending the first Monday in January, 1899. The answer of the respondent sets out that at the election relator received one hundred and twenty-three votes, and the respondent four hundred and forty-three votes. The answer also admits substantially the facts that he was an alderman of the city of Brunswick at the time the election for mayor was held, and was elected alderman at the time and for the term as alleged by relator. Under these facts the relator prays leave be granted him to file the information as being legally entitled to the office of mayor under and by virtue of such election.

If the relator under the facts is entitled to the office, leave to file the information on this ground should have been granted. Our first code, taking effect January 1, 1862, § 126, made the following provision: "If at any popular election to fill any office the person elected is ineligible under the foregoing rules, the person having the next highest number of votes, who is eligible, whenever a plurality elects, shall be declared elected,

and be qualified and commissioned to such office." One of the "foregoing rules" referred to is ineligibility under the constitution and laws. We have endeavored to trace the source of this stated provision of law, and find that it was codified from an act of the legislature approved January 22, 1852 (Acts of 1851–52, page 79), amending the act of December 4, 1799, which provided for appointment of county officers, and making it the duty of the governor to commission the person having the highest number of legal votes, or order a new election as circumstances might require, where an election for ordinary or any county office should be contested and the grounds sustained. Apparently in the code it was made to apply to all officers—in the original act to county officers who were commissioned. The same provision appeared as the law in the Code of 1868, § 121, and in the Code of 1873, § 130, but was expressly repealed by an act of the General Assembly in 1871 (Acts of 1871–72, page 19), and we now have no statute containing this provision. In the case of the *State ex rel. Hardwick* v. *Swearingen*, 12 *Ga.* 23, this court held that a person receiving only a minority of the legal votes polled is not entitled to be installed into an office, notwithstanding the incumbent be removed on account of some personal disqualification. Under such circumstances a new election will be ordered. The American doctrine, supported by an undoubted preponderance of authority, is that though the candidate receiving the highest number of votes because of his ineligibility fail of an election, yet the votes cast for him are so far effectual as to prevent the election of other candidates, and there is no election at all. 52 Am. Dec. 149; 14 Wis. 497; 13 Cal. 145; 21 La. 289; 53 Mo. 97; 47 Miss. 266; 66 Pa. 270. Unless the votes for an ineligible person are expressly declared to be void, the effect of such person receiving a majority of the votes cast is, according to the weight of American authority and the reason of the matter, that a new election must be held, and is not to give the office to the qualified person having the next highest number of votes. Throop on Pub. Officers, and authorities cited under note 1. The ground then taken by the relator, that, by virtue of the ineligibility of the respondent (who received the largest

number of votes), he, the relator, being eligible and receiving the next highest number of votes, is entitled to the office, is not tenable; and on this ground leave to file the information was properly refused.

But the relator also alleges in his application, that "he is a citizen of the State of Georgia and of the county of Glynn and of the city of Brunswick therein, and that as such citizen he has an interest in and is entitled to all the privileges of a citizen in the election of officers for said city and in the office of mayor of said city." The interest which one who is a citizen and taxpayer has in the due administration of public affairs will entitle him to maintain the proceeding. *Churchill* v. *Walker*, 68 *Ga.* 681; 44 Penn. St. 341; 46 Conn. 479; 53 Mo. 97; 42 N. J. L. 435. Both of these remedies, that is, to install into office the person legally elected, and to oust the incumbent illegally discharging the duties, may be sought by the same information. Mechem's Pub. Off. § 478; 12 N. E. R. 700.

It follows from what has been said as to the general law of · the State rendering councilmen and aldermen of cities and towns of this State, of the class in which the city of Brunswick is placed, incompetent to hold any other municipal office in such city during the time for which they were chosen as such councilmen or aldermen, that the facts stated in the record would entitle the relator to leave to file the information for which application was made, not on his claim to the office under the facts shown, but by reason of his citizenship and consequent interest in the office of mayor; and the judgment of the court below refusing the application is

*Reversed.    All the Justices concurring.*