## STEWART *v.* CARTWRIGHT *et al.*
## STEWART *v.* SEABROOK *et al.*

1. Section 22 of the act of 1914 (Acts 1914, p. 1162), referring to elections in the City of Savannah for mayor and aldermen and a recorder, declares: "There shall be provided for use in said elections official ballots containing in separate columns the names of the candidates for mayor and aldermen 'and recorder; there shall be as many columns as there shall be respective tickets or independent candidates, and the voter shall scratch thereon the names of all candidates against whom he proposes to vote. The ballots shall be printed upon thick blue paper, and all ballots shall be of uniform size and color. The ballots shall be prepared by the clerk of council at the expense of the city, and shall contain at least two inches margin on every side of the printed matter. . . No vote cast on any other ballot shall be received by the managers of the election; if received by error or otherwise it shall not be counted." *Held,* that under application of this statute, where the clerk of council prepares an official ballot that contains the name of only one candidate for mayor, such ballot may be supplemented by scratching the name of the candidate for mayor thereon and substituting the name of a different person as the voter's choice for mayor, without destroying the official character of the ballot or rendering the vote cast through its instrumentality unlawful.

2. In section 6 of the act of 1914 (Acts 1914, p. 1172), relating to primary elections, it was provided that a nominee at a primary election held in accordance with the act might become a candidate in the next general election, and that a person other than such nominee might become an independent candidate for mayor; but the act restricted the right to become such independent candidate to persons who should, within five days before the general election, file with the clerk of council a petition

endorsing his candidacy, signed by not less than one third of the persons registered and qualified to vote in the general election, and declared that no vote should be counted for an independent candidate who had not complied with such conditions, and that if it should appear at any time that the petition did not contain the requisite number of names of registered qualified voters endorsing his candidacy, such independent candidate should be ineligible and his election void. *Held*, that under application of this law and the provisions of section 22 of the election law quoted in the preceding note, in order to show illegality of votes that were cast for an independent candidate, or that his election was void on the ground that the petition which he filed with the clerk of council was not endorsed by the requisite number of persons registered and qualified to vote for mayor at the general election, it is essential that the complainant shall show the fact that the petition filed with the clerk of council did not have the requisite endorsement.

(*a*) The facts alleged in the petition for mandamus were insufficient to show non-compliance with the requirements of the statute as to the number of persons endorsing the petition, and consequently insufficient to prevent the counting of votes cast for such independent candidate. or to render his election void on the ground of a failure to comply with the statute in that respect.

3. It not appearing that the votes cast for the respondent were unlawful upon any ground relied on, the judge did not err in refusing the mandamus nisi or in refusing a rule to show cause, etc., in the ancillary petition for injunction.

4. The controlling questions in both cases are disposed of by the rulings in the preceding notes; and it is unnecessary to deal with the motion to dismiss the bill of exceptions in the injunction case, or with other questions not specifically decided.

Nos. 3596, 3612.   SEPTEMBER 5, 1923.

Petitions for mandamus and injunction. Before Judge Dickerson. Chatham superior court. January 16, 1923.

An election for mayor of the City of Savannah was held on January 9, 1923. There were two election managers at each polling-place, whose duty it was to conduct the election, receive the ballots cast, and at the close of the polls count the votes, and make returns to a board of canvassers consisting of the judge of the superior court, the judge of the city court, and the ordinary of the county. It was the duty of the board of canvassers to receive and publicly consolidate the returns from the managers at all the polling-places in the city, and publicly announce the result of the election, and to file the consolidated returns as made by the canvassers in the office of the clerk of council as an official paper of the city. Hon. Murray Stewart was a candidate for mayor whose right to be such candidate was never questioned. He received a

13

stated number of votes. Votes were also cast for Hon. Paul E. Seabrook; but his right to be a candidate and the lawfulness of all votes cast for him were drawn into question. Controversies arose between the managers at the several voting places as to their duty to count any ballots cast for Seabrook, and as a consequence one of the two managers at each place refused to make any count or return of the ballots cast at his place, and the other manager proceeded alone and made a count and return of all ballots cast at such place. Two of the canvassers received and consolidated the returns so made by one manager from each voting place, and declared Seabrook elected. The other canvasser refused to participate in the reception of the returns signed by one manager and declaration of the election of Seabrook, but all the canvassers signed the consolidated returns and filed them with the clerk of council. On January 12, 1923, Stewart presented to the judge of another circuit his petition for mandamus against all the election managers and the entire board of canvassers, to compel the former to count the ballots and make returns from the several places of election, on the basis of counting all ballots cast for Stewart and excluding all ballots cast for Seabrook; and to compel the board of canvassers to receive and consolidate such returns, declare the result, and file with the clerk of council consolidated returns that would show Stewart's election. The judge to whom the petition was presented rendered the following judgment, without any demurrer or answer having been filed, or introduction of any evidence: "The foregoing petition considered; and having doubts as to the propriety of my assuming jurisdiction, and being of the opinion that no cause for mandamus is stated, the prayer for mandamus nisi is refused. It is my opinion that Judge Seabrook could lawfully be voted for by the qualified voters of Savannah." The petitioner excepted to this judgment. The bill of exceptions was certified by the judge on January 17, 1923. The term for which the mayor was elected would not begin until January 22, 1923, and Seabrook was not exercising any of the duties of mayor at any time prior to the last-mentioned date. Contemporaneously with the mandamus proceeding, Stewart, as incumbent of the office in virtue of a prior election with statutory right to hold over until his successor should be elected and qualified, instituted an ancillary suit against the board of canvassers and Seabrook,

seeking cancellation of the consolidated returns filed with the clerk of council; and the writ of injunction to prevent Seabrook, until the issues involved in the mandamus case should be determined, from taking the oath of office and interfering with Stewart in his discharge of the duties of the office. In an order similar to that quoted in the mandamus suit the judge entered a judgment refusing to grant a rule nisi. The petitioner excepted and assigned error on this judgment. Both cases were argued together in the Supreme Court. Other facts sufficiently appear in the opinion.

*Shelby Myrick, J. J. Bouhan, A. A. Lawrence, D. S. Atkinson,* and *E. A. Cohen,* for plaintiff, Stewart.

*R. L. Colding* and *H. M. Jordan,* for Stewart managers.

*Adams & Adams, Lawton & Cunningham, Hitch, Denmark & Lovett, McIntire, Walsh & Bernstein, Oliver & Oliver, M. A. O'Byrne, A. P. Wright,* and *E. C. Brennan,* for defendants.

ATKINSON, J. 1. Two local statutes were approved on August 12, 1914, providing a method for electing a mayor and aldermen and a recorder for the City of Savannah. One is the primary law (Acts 1914, p. 1172) and the other the election law (Acts 1914, p. 1162). Section 23 of the election law provides: "That all candidates for mayor and aldermen and recorder, who may have been nominated by any political party at the primary election provided for by law for the City of Savannah, shall file with the clerk of council of said city, five days before the election provided for in this act, notice of their nomination by their respective political parties; and in case there should be any independent candidate or candidates for such offices, a declaration of an intention to become a candidate for mayor or alderman or recorder must likewise be filed with said clerk of council five days before the election provided for in this act; which declaration must be accompanied by the petition described in the act regulating primary elections for mayor and aldermen and recorder in the City of Savannah." Section 22 of the election law provides: "That in all elections for mayor and aldermen and recorder of the City of Savannah there shall be provided for use in said elections official ballots containing in separate columns the names of the candidates for mayor and aldermen and recorder; there shall be as many columns as there shall be respective tickets or independent candidates, and the voter shall scratch thereon the names of all candidates against

whom he proposes to vote. The ballots shall be printed upon thick blue paper, and all ballots shall be of uniform size and color. The ballots shall be prepared by the clerk of council at the expense of the city, and shall contain at least two inches margin on every side of the printed matter. On the morning of the election the clerk of council shall deliver to the representatives of each of the tickets not less than 15,000 of said ballots. The representatives of each of said tickets may, on the day before the election, procure from the clerk not more than 15,000 of said ballots, but said ballots shall be delivered at the expense of the parties requesting the same, and it shall be the duty of the clerk to deliver said ballots to said applicants not later than twelve o'clock on the day preceding the election. No vote cast on any other ballot shall be received by the managers of the election; if received by error or otherwise it shall not be counted. It shall be unlawful for any manager of the election or any clerk to examine any ballot offered by any voter except for the purpose of counting the ballot after the polls have closed; and any manager or clerk violating this provision shall be held guilty of a misdemeanor under the laws of the State of Georgia, and shall be punished as provided in section 1065 of the Penal Code of the State of Georgia." The clerk of council prepared and issued official ballots to be voted at the general election to be held in Savannah, January 9, 1923, that contained the name of Stewart as the only candidate for mayor. After the ballots were issued some of them were altered by other persons without authority from the clerk, by erasing the name of Stewart and substituting the name of Seabrook, and in that form were cast by voters at the general election. It is contended by the petitioner that the above-described alteration of ballots destroyed their character as official ballots, and that when cast by voters at the election for Seabrook the votes thereby expressed were void and could not be counted, because they were outlawed by the statute, and especially by the prohibitive language in section 22, that " no vote cast on any other ballot shall be received by the managers of the election; if received by error or otherwise, it shall not be counted."

One question for decision is, should the statute be so construed as to render unlawful votes that were cast for Seabrook, solely on the ground that they were cast by ballots altered in the manner

above indicated? To give the statute such construction would mean that the act of the clerk of council in arbitrarily or negligently leaving off the official ballot the name of a candidate duly qualified under section 23 of the act would render it impossible for a voter to vote for such candidate at an election held at the appointed time, and thus deprive him of voting for the candidate of his choice. It would also render it impossible for a voter at such general election to vote for any other person as his choice for mayor. But if the statute should be construed as authorizing the substitution of names of candidates on the official ballot to be voted for, the voter would not, under any of the circumstances enumerated, be deprived of voting for the person of his choice. Statutes of this kind are to be liberally construed in favor of the right of the voter. If a statute is subject to two constructions, one of which would make it constitutional and the other of which would render it unconstitutional, the former will be adopted. The constitution of this State, art. 2, sec. 1, par. 2 (Civil Code, § 6396), as modified by the 19th amendment to the constitution of the United States provides that: " Every . . citizen of this State who is a citizen of the United States, twenty-one years old or upwards, not laboring under any of the disabilities named in this Article, and possessing the qualifications provided by it, shall be an elector and entitled to register and vote at any election by the people: Provided, that no soldier, sailor, or marine in the military or naval service of the United States shall acquire the rights of an elector by reason of being stationed on duty in this State." The words " shall be an elector and entitled to register and vote at any election by the people " are unequivocal, and the entire provision amounts to a constitutional guaranty of the right of suffrage, which, though subject to reasonable regulation, can not be absolutely denied or taken away by legislative enactment. There can not be any doubt that a statute providing for an official ballot for use at a general public election, which prescribes the form to be of such character as will deny the voter his right to vote for whomsoever he pleases, would be violative of the above provision of the constitution. Elections for municipal offices are not constitutional offices, but are not excepted on that ground. *Howell* v. *Pate,* 119 *Ga.* 537 (46 S. E. 667).

The great weight of authority in other jurisdictions is in har-

mony with the foregoing views. In State *v.* Dillon, 32 Fla. 545, 578 (14 So. 383, 393, 22 L. R. A. 124), it was said: " It is also alleged that by the terms of the act in question the qualified electors of the City of Jacksonville were not permitted to vote for whom they pleased, but were restricted in the right of suffrage to vote for persons whose names were placed upon an official ballot by the election commissioners. It has been held by this court that the last clause of section 6 of article VI of the constitution, which is, that ' in all elections by the people the vote shall be by ballot,' applies to municipal elections. State ex rel. *vs.* Anderson, 26 Fla. 240, 8 South. Rep. 1. We still adhere to this decision. It was here said that ' the material guarantee of this constitutional mandate of vote by ballot is inviolable secrecy as to the person for whom an elector shall vote. The distinguishing theory of the ballot system is that every voter shall be permitted to vote for whom he pleases, and that no one else shall be in a position to know for whom he has voted, or shall know unless the voter shall of his own free will inform him.' There is no doubt in our minds about the right of the legislature to prescribe an official ballot and to prohibit the use of any other; and the provisions of the act in reference to printing the names of candidates regularly nominated by a convention, mass meeting, or primary election, or who run as independents, are valid. But the legislature can not, in our judgment, restrict an elector to voting for some one of the candidates whose names have been printed upon the official ballot. He must be left free to vote for whom he pleases, and the constitution has guaranteed to him this right."

In Cole *v.* Tucker, 164 Mass. 486 (41 N. E. 681, 29 L. R. A. 668), it was said: " In general it may be said that the so-called Australian ballot acts, in the various forms in which they have been enacted in many of the States of this country, have been sustained by the courts, provided the acts permit the voter to vote for such persons as he pleases by leaving blank spaces on the official ballot in which he may write or insert in any other proper manner the names of such persons, and by giving him the means and a reasonable opportunity to write in or insert such names. State *v.* McMillan, 108 Mo. 153. Bowers *v.* Smith, 111 Mo. 45. Detroit *v.* Rush, 82 Mich. 532. Attorney-General *v.* May, 99 Mich. 538. De Walt *v.* Bartley, 146 Penn. St. 529. State *v.* Black, 25

Vroom, 446. State *v.* Dillon, 32 Fla. 545. Taylor *v.* Bleakley, 39 Pac. Rep. 1045. Slaymaker *v.* Phillips, 40 Pac. Rep. 971. People *v.* Wappingers Falls, 144 N. Y. 616. Sego *v.* Stoddard, 136 Ind. 297. Curran *v.* Clayton, 86 Maine, 42. Whittam *v.* Zahorik, 59 N. W. Rep. 57." See also 20 C. J. 140, § 162; Littlejohn *v.* People, 52 Colo. 217 (121 Pac. 159, 29 Ann. Cas. 1913D, 610, 614, and cases cited in notes) ; Barr *v.* Cardell, 173 Iowa, 18 (155 N. W. 312). The case last cited had reference to the election of a superior judge in a named municipality, which office was not included among the constitutional offices provided for in article 5, section 1, of the constitution of Iowa, which declares: " The judicial power shall be vested in a supreme court, district court, and such other courts, inferior to the supreme court, as the General Assembly, may, from time to time, establish."

In the light of what has been said, what construction should be placed on section 22 of the election law, providing for an official ballot? It is clear that if there was no right to alter the matters contained on the official ballot to the extent of substituting a name as the choice of the voter different from that which it originally contained, the voter would be denied the right to vote for whom he pleased; and that in such circumstances the act would be unconstitutional. On the other hand, if there was a right to alter the ballot to the extent indicated, the voter could exercise his choice, and the law would not be unconstitutional. The act expressly denied the right to cast any ballot, except the official ballot, and expressly provided that the clerk of council should place on the official ballots the names of all candidates who, in compliance with section 23 of the election law, had filed notice of their nomination under the primary law or notice of their intention to become independent candidates, but did not expressly provide that the clerk of council or any other person or voter could not add or substitute other names so as to enable the voter in casting the ballot to vote for his choice. The statute expressly provided that the voter should scratch the names of all candidates against whom he desired to vote, but omitted to say what he should do in order to vote for a candidate of his choice whose name was not on the ballot. So finally it appears that the statute expressly authorized the voter to do everything complained of with the ballot which was issued by the clerk of council, except to add the name of the

candidate for whom he desired to vote. It does not appear that such addition of a substituted name would materially affect the secrecy of the ballot or legality of the election. In the circumstances the language of section 22 of the election law, providing for placing of names on the official ballot, was evidently intended by the legislature to be directory in so far as it might affect legality of votes that should be cast, and not intended to exclude votes that were cast by ballots on which names of candidates of the voters' choice should be substituted for names of candidates entered upon the ballot by the clerk of council or by his authority. The substitution of the names described above would not amount to destruction of the official character of the ballot, but would be perfection of the ballot to conform to the voter's choice. In this view the votes cast for Seabrook were not rendered unlawful by substitution of names on the official ballots.

2. But it is urged that the votes cast for Seabrook were also void and should not be counted, on the ground that Seabrook was ineligible to become a candidate at the election. This contention was based on section 22 of the election law quoted in the preceding division and section 6 of the primary law, which follows: " No person shall be entitled to become a candidate in the next succeeding regular municipal election in said city for mayor and aldermen, or recorder, who has not been nominated by a political party of the description aforesaid at a primary election held under the terms of this act, unless any person desiring to enter in said next succeeding municipal election as an independent candidate for mayor or alderman or recorder shall, within five days before said general election in said city, file with the clerk of council of said city a petition endorsing his candidacy, signed by not less than one third of the persons registered and qualified to vote in the next succeeding regular municipal election.. No votes shall be counted for any person who has not been so nominated by said party or for any independent candidate who has not filed the petition aforesaid. And if it should appear at any time that the petition of any independent candidate does not contain the names of at least one third of the registered voters fully qualified by law, said candidate shall be ineligible and the election of any such candidate shall be null and void." This law is a part of a system of election laws for the City of Savannah composed of the election

law and the primary law mentioned in the statement of facts, and contemplates eligibility of candidates in the general election. It expressly declares conditions that must be complied with to entitle a person to become a candidate at the general election, and expressly declares that " no votes shall be counted for any person " who has not complied with such conditions; " and if it should appear at any time " that the conditions had not been complied with by a person offering for election, such person " shall be ineligible," and his " election . . shall be null and void." This language, unlike the statute considered in the preceding division, is not susceptible of two constructions, but manifests a legislative intent that a person shall be ineligible to election if he has not complied with the statutory conditions, and that if the conditions are not complied with the election of such person shall be void. In these circumstances the disqualifying clause must be held mandatory. Therefore, under a proper construction of this law, the votes cast for Seabrook would be unlawful and not entitled to be counted if he did not comply with the conditions. It was specifically alleged that he was not a nominee of a political party. If the statute had restricted the right to become a candidate in the general election to persons nominated by a political party, the fact that Seabrook was not a nominee of a political party would be fatal to his cause; but the statute left the way open for him to become an independent candidate by filing with the clerk of council, five days before the election, " a petition endorsing his candidacy, signed by not less than one third of the persons registered and qualified to vote in the next succeeding regular municipal election." It was under this clause that Seabrook proposed to qualify. The petition for mandamus alleged: " Petitioner was the only person qualified by law to have his name placed upon the official ballot as a candidate for said office of mayor;" " that the clerk of council has exclusive authority, under the charter of the City of Savannah, to determine whose names are to go upon the official ballots;" " that Paul E. Seabrook filed with the clerk of council a petition as an independent candidate for mayor of Savannah;" " that the clerk of council determined that the petition of the said Paul E. Seabrook was insufficient in law, and that your petitioner was the only person qualified by law to have his name placed upon the official ballot as a candidate for mayor of said City." These allegations

are to be construed most strongly against the pleader.   Giving them such construction, they do not amount to an allegation that the petition of Seabrook was not in fact endorsed by not less than one third of the persons registered and qualified to vote in the next regular municipal election.   The duties of the clerk of council were purely ministerial, and section 22 of the election law did not confer upon him authority to determine whether candidates had been properly nominated by other political parties, or to determine whether any independent candidate had procured the endorsement of the necessary number of registered voters to render him eligible to become a candidate in the election.   The excerpts quoted above from the petition for mandamus constitute the entire allegations relied on to show that Seabrook was ineligible as an independent candidate.   They are suggestive in character, but do not state any definite conclusion, even if it would have been good pleading to state a bare conclusion.   As indicated above, such allegations are insufficient to show Seabrook's ineligibility as an independent candidate.   It follows from what has been said, that the applicant for mandamus fails to make out a clear case entitling him to the writ of mandamus.

3.   As appears from the statement of facts, the application for mandamus sought to compel the managers to count and return only such ballots as were cast for Stewart, and the canvassers to receive and consolidate only such returns and votes as would show Stewart's election.   As the votes cast for Seabrook were not shown to be illegal as contended, there was no ground to authorize the writ of mandamus.   As the writ of mandamus was unauthorized, there was no basis for the ancillary writ of injunction founded on the same state of facts.   Consequently the judge did not err in refusing a mandamus nisi, and a rule to show cause upon the ancillary petition for injunction.

4.   What has been said in the preceding divisions is controlling in both cases; and it becomes unnecessary to deal with the motion to dismiss the bill of exceptions in the injunction suit, or to refer to the numerous other questions that were discussed in the briefs of the attorneys for the respective parties and that are not specifically decided.

*Judgment affirmed.   All the Justices concur, except*

RUSSELL, C. J., dissenting. I yield to no living man in the intensity of my individual personal contention that every citizen who is entitled to vote has the right to cast his ballot for whomsoever he pleases, and that any citizen may be proposed as a candidate for any office for which his name may be presented, either on his own motion or at the instance of any citizens who may desire his election. This is in accord with the spirit of American institutions, and in my opinion the perpetuation of these principles depends entirely upon our adherence to this democratic doctrine.

However, in the rendition of judicial decisions the personal views of a judge cannot be of any consequence when the law is plain. If the question of the unconstitutionality of the local laws relating to elections in Savannah were anywhere presented in the record in this case so that this question could be properly adjudicated, I think I should hold them unconstitutional, and the same result would then be reached as that which has been obtained by my colleagues. This record does not present any question of the unconstitutionality of the local election laws referred to, and for that reason the question cannot properly be adjudicated at this time. So far as I am aware, nothing is better settled than that a court cannot decide a question not presented in the record. I have no reference to the well-recognized rule that where a case can be decided without consideration of any constitutional question involved, the court will abstain from the determination of the constitutional question; but what I mean to say is that no court will volunteer a decision upon a proposition which is not invoked by the record. Such a practice would, in my opinion, tend to depreciate the impartiality of the court in the public estimation. What I am saying is not uttered in the slightest spirit of criticism, but merely because, though I have the greatest respect for the opinion of my colleagues, I have a fixed conviction upon the rule of adjudication to which I have referred which embraces all cases subject to review, and in my opinion the record does not present the question of the unconstitutionality of the local act referred to. The decision depends on the question made by the record and for that reason I cannot assent to the conclusion reached by my brethren.

The General Assembly has provided a comprehensive system for the election of the mayor and aldermen of the City of Savannah.

Section 6 of the act of August 12, 1914 (Acts 1914, pp. 1175-1176), is as follows: "Section 6. Be it enacted by the authority aforesaid, that no person shall be entitled to become a candidate in the next succeeding regular municipal election in said city for mayor and aldermen, or recorder, who has not been nominated by a political party of the description aforesaid at a primary election held under the terms of this act, unless any person desiring to enter in said next succeeding municipal election as an independent candidate for mayor or alderman or recorder shall, within five days before said general election in said city, file with the clerk of council of said city a petition endorsing his candidacy, signed by not less than one third of the persons registered and qualified to vote in the next succeeding regular municipal election. No votes shall be counted for any person who has not been so nominated by said party, or for any independent candidate who has not filed the petition aforesaid. And if it should appear at any time that the petition of any independent candidate does not contain the names of at least one third of the registered voters fully qualified by law, said candidate shall be ineligible and the election of any such candidate shall be null and void." By this act no vote shall be counted for any person who has not been so nominated by his party, or for an independent candidate who has not filed the petition required; and if it should appear at any time that the petition of any independent candidate does not contain the names of at least one third of the registered voters fully qualified by law, said candidate shall be ineligible and the election of such candidate shall be null and void.

Section 23 of the act of August 12, 1914 (Acts 1914, p. 1170), provides that all persons who have been nominated by a political primary shall, five days before the election, file with the *clerk of council* notice of their nomination by their respective parties; and that in case of an independent candidate, he must likewise, five days before the election, file with the *clerk of council* a declaration of his intention to run, which must be accompanied by the petition described in section 6 of the act of August 12, 1914, above quoted.

Section 22 of the act of August 12, 1914 (Acts 1914, p. 1169), is as follows: "In all elections for mayor and aldermen and recorder in the City of Savannah there shall be provided for use in said election official ballots containing in separate columns the

names of the candidates for mayor and aldermen and recorder; there shall be as many columns as there shall be respective tickets or independent candidates, and the voter shall scratch thereon the names of all candidates against whom he proposes to vote. The ballots shall be printed upon thick blue paper, and all ballots shall be of uniform size and color. The ballots shall be prepared by the clerk of council at the expense of the city, and shall contain at least two inches margin on every side of the printed matter. On the morning of the election the clerk of council shall deliver to the representatives of each of the tickets not less than 15,000 of said ballots. The representatives of each of said tickets may, on the day before the election, procure from the clerk not more than 15,000 of said ballots, but said ballots shall be delivered at the expense of the party requesting the same, and it shall be the duty of the clerk to deliver said ballots to said applicants not later than twelve o'clock on the day preceeding the election. No vote cast on any other ballot shall be received by the managers of the election; if received by error or otherwise, it shall not be counted. It shall be unlawful for any manager of the election or any clerk to examine any ballot offered by any voter except for the purpose of counting the ballot after the polls have closed, and any manager or clerk violating this provision shall be held guilty of a misdemeanor under the laws of the State of Georgia, and shall be punished as provided in section 1065 of the Penal Code of the State of Georgia." This statute provides for an official ballot, and that it shall be prepared by the clerk of council; and it expressly commands that " no vote cast upon any other ballot shall be received by the managers of the election; and if received by error or otherwise, it shall not be counted." It will thus be seen that the statutes provide an official ballot, and the names to be placed thereon, and designates the clerk of council as the official to execute the terms of the statute prohibiting the use of any ballot other than that prepared by the clerk of council, which is denominated an official ballot.

Municipal corporations are creatures of statute. By the General Assembly they may be created or destroyed. *Churchill* v. *Walker,* 68 *Ga.* 681; *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871 (40 S. E. 1004, 57 L. R. A. 230). The General Assembly, under this plenary power, has imposed upon the clerk of council

of the City of Savannah the duty of preparing a ballot in accordance with the terms of the statute. This is an official duty. This is not a personal duty. It is a duty imposed by statute. If he omits, neglects or disregards the duty, it may be compelled by mandamus. Civil Code, §§ 5440-5441; 20 Cyc. 146, § 171. The position of the majority of the court, which in its last analysis is that in the event of a failure to perform this official duty an individual may perform it, is contrary to the underlying principles of law. That an official duty can neither be delegated to or usurped by an individual is elementary. The thought that private persons may perform an official duty imposed upon the clerk of council is denounced by the statute, which declares that "no vote cast upon any other ballot [a ballot prepared by the clerk of council] shall be received by the managers of the election; if received by error or otherwise, it shall not be counted." From this it follows that it was the mandatory duty of the managers of the election in this case to follow the statute, and to count only those votes cast upon the official ballots.

It is contended that the statutes are unconstitutional, in that they deprive the elector of the right to cast his ballot for whom he pleases. I do not consider this question involved in this case, as it is the unvarying rule of this court not to consider the question of the constitutionality of any statute unless such issue is raised by the pleadings in the court below. *Griggs* v. *State,* 130 *Ga.* 16 (60 S. E. 103); *Anderson* v. *State,* 2 *Ga. App.* 1 (58 S. E. 401); *Lee* v. *Central of Ga. Ry. Co.,* 147 *Ga.* 430 (94 S. E. 558, 13 A. L. R. 156). The pleadings in this case raised no issues as to the constitutionality of these statutes. If the question were properly under consideration, I would say that it is controlled by the case of *Crovatt* v. *Mason,* 101 *Ga.* 246 (28 S. E. 891). In that case although Mason received a large majority of the votes, his election was declared invalid because of a statute which provided that no councilman or alderman should be competent to hold any other municipal office during the time for which they were chosen. This statute was held to be constitutional. If it is competent for the legislature to deprive the voters of Brunswick of the right to vote for certain classes for mayor and aldermen, why is it not competent for the legislature to prescribe the qualifications of the candidates for mayor and aldermen of the City of Savannah? The

case of *Crovatt* v. *Mason,* supra, has never been questioned, and is in accord with the best considered decisions of other states. Hanna *v.* Young, 57 Am. St. R. 396 (84 Md. 179, 35 Atl. 674, 34 L. R. A. 55) ; State *v.* Hanson, 80 Neb. 738 (117 N. W. 412) ; Scown *v.* Czarnecki, 264 Ill. 305 (106 N. E. 276, L. R. A. 1915B, 247, Ann. Cas. 1915A, 772) ; Spitzer *v.* Fulton, 92 Am. St. R. 736 (172 N. Y. 285, 64 N. E. 957).

For the foregoing reasons I think the judgment of the court below should be reversed.   .