### 18350. MAYOR &c. OF ATHENS v. WANSLEY et al.

ARGUED SEPTEMBER 15, 1953—DECIDED OCTOBER 14, 1953—REHEARING DENIED NOVEMBER 12, 1953.

*James Barrow, Milner, Stephens & Bentley,* for plaintiff in error.

*Erwin, Nix, Birchmore & Epting,* contra.

CANDLER, Justice. This litigation, which was instituted in the Superior Court of Clarke County by the Mayor and Council of the City of Athens against the members of the Civil Service Commission of the City of Athens, involves a controversy between the parties respecting the right to direct and control the manner in which the members of the city's police department shall perform their respective duties and the employment of certain personnel. The case was heard by the judge on an agreed statement of facts, and all of the relief sought by the plaintiff was denied. The exception is to that judgment, and the writ of error presents the following questions: (1) Is the right to direct and control the manner in which the members of the police department of the City of Athens perform their official duties vested in the mayor, as chief executive of the city, or in the city's civil service commission? (2) Is the city entitled to an injunction enjoining the members of the Civil Service Commission of the City of Athens from attempting to direct and control the manner in which the officers of the police department of the City of Athens perform their official duties? (3) Are part-time policewomen, whose duties consist only of directing traffic for the safety of children while crossing streets on school days, members of the police department within the meaning of and subject to the employment provisions of the Athens Civil Service Act of 1918? These three questions will be considered and disposed of in the order of their statement.

1. The legislature by an act which was approved on August

24, 1872 (Ga. L. 1872, p. 127), granted to the City of Athens its present basic charter. Section 1 of the act provides that the municipal government of the City of Athens shall consist of a mayor and council. By section 9 the mayor and council are empowered to elect annually a city marshal or chief of police, fix his salary, provide for his official bond and oath of office, prescribe his duties, and remove him from office for a breach or neglect of duty or for an incapacity to discharge his official duties; and by section 15 of the act they are authorized to pass any regulation or ordinance necessary and proper for the security, welfare, and interest of the city and for the preservation of peace, health, order, and good government. By the incorporating act of 1872 the Mayor of the City of Athens became its chief executive officer. See *Crovatt* v. *Mason*, 101 *Ga.* 246, 253 (28 S. E. 891). The legislature in 1918 amended the act of 1872 by creating a Civil Service Commission for the City of Athens. See Ga. L. 1918, p. 528. The amending act deals primarily with personnel selection, personnel status, and management and protection in official tenure. It expressly confers upon the members of the Civil Service Commission power to adopt, amend, and enforce a code of rules and regulations for the appointment and employment of personnel in all positions in the city's police department based on merit, efficiency, character, and industry; to provide for promotions in all positions in the police department based on records of merit, efficiency, conduct, and seniority; and to provide for demotions in official rank and for discharge from service after notice and hearing. Section 6 of the act requires the members of the Civil Service Commission to make investigations concerning the efficiency of the police department and to submit an annual report concerning the same to the mayor and council. In addition to such annual report, section 7 of the act requires them to render to the mayor and council monthly statements of expenditures by the police department. Section 19 confers power on the commission, with the approval of the mayor and council of the city, to increase or diminish the number of persons employed in the police department. Section 20 provides that the Civil Service Commission shall from time to time inspect the physical equipment of the police department and, after consultation with the chief of

the department, make recommendations to the mayor and council for the purchase, exchange, or sale of apparatus and equipment; but this section of the act expressly provides that no such apparatus or equipment shall be purchased, exchanged, or sold by the commission unless authorized by the mayor and council. Section 21 requires the mayor and council, at the beginning of each year, to fix the compensation of all employees of the police department and to make an appropriation from city funds for the payment thereof. Section 5 declares that the Civil Service Commission shall have complete control over the police department and the personnel of the same, subject only to the provisions of the act. Relying on section 5 of the act, the defendants contend that the Mayor of Athens has no executive power over the officers of the police department, and hence no jurisdiction to direct or control the manner in which they perform their official duties. We cannot assent to this contention. The amending act of 1918 does not expressly repeal any part of the incorporating act of 1872, and repeals by implication are not favored (*Erwin* v. *Moore*, 15 *Ga.* 361); and they never occur except where the later act is clearly and indubitably contradictory of and contrary to the former act, and the repugnancy is such that the two cannot be reconciled. *Montgomery* v. *Board of Education of Richmond County*, 74 *Ga.* 41; *Swift* v. *Van Dyke*, 98 *Ga.* 725 (26 S. E. 59); *Moore* v. *State*, 150 *Ga.* 679 (104 S. E. 907); *Connor* v. *O'Brien*, 198 *Ga.* 221 (31 S. E. 2d 399). Before a subsequent act will repeal by implication the provisions of a prior act, there must be a positive repugnancy between the provisions of the new law and those of the old. Wood *v.* U. S., 41 U.S. 342, 362 (10 L. ed. 987). And the necessary implication of repeal must be so strong that it is equivalent to an express repeal. *City of Atlanta* v. *Gate City Gas Light Co.*, 71 *Ga.* 106, 122. The act of 1872, as we have pointed out, confers exclusive power on the Mayor and Council of the City of Athens to prescribe the duties of its police officers, and this provision of the 1872 act is not altered, expressly or by implication, by the provisions of the Civil Service Act of 1918. And, as we read and construe it, the latter act contains no provision which divests the mayor of his official duty to execute faithfully the ordinances of the city and see that its officers properly per-

form their respective duties. Hence, we hold that the Mayor of Athens, and not the members of the Athens Civil Service Commission, has jurisdiction and authority to direct and control the city's police officers in the performance of those official duties which the mayor and council are required to prescribe. And strength is added to this ruling by the legislature's act of 1946, which in part provides: "The Mayor of the City of Athens is hereby declared to be and is hereby made the Chief Executive Officer of the City of Athens." Ga. L. 1946, p. 314.

2. It is alleged in the petition, admitted in the answer, and stipulated by the parties that the defendants, as members of the Athens Civil Service Commission, have taken control of the city's police department and are, to the exclusion of the mayor, directing the manner in which the city's police officers perform their official duties. The court refused to enjoin these continuous acts of interference. This was error. As we have held in the preceding division of this opinion, no such power was conferred upon the defendants by the Civil Service Act of 1918, and equity has undoubted jurisdiction to restrain them from acting in excess of their authority and from the commission of acts which are ultra vires. *Wells* v. *Mayor &c. of Atlanta,* 43 *Ga.* 67; *Keen* v. *Mayor &c. of Waycross,* 101 *Ga.* 588 (29 S. E. 42); *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795, 805 (36 S. E. 247); *Lewis* v. *Turner,* 139 *Ga.* 174 (76 S. E. 999); 2 High, Inj. 1247, § 1241; 28 Am. Jur. 356, § 166; 43 C.J.S. 614, § 108.

3. The defendants by way of cross-action allege that the plaintiff, during 1952, employed 14 women to perform certain police duties on a part-time basis; that they were assigned to work under the supervision and direction of the city's chief of police; that they were not employed by the chief examiner of the city's Civil Service Commission, as required by section 8 of the city's Civil Service Act; and that they have been paid and are now receiving pay from the plaintiff for their services, although their names have not been certified to the Treasurer of the City of Athens in accordance with the provisions of the Civil Service Act. They prayed for a judgment declaring such action to be beyond the plaintiff's lawful authority. With respect to these allegations it was, in substance, stipulated: The Mayor and Council of the City of Athens on August 7, 1952, authorized

the city's chief of police to select and employ 14 competent policewomen on a part-time basis as a school-child safety measure. Funds were made available for the payment of their salaries by transferring $2,250 from the Mayor and Council's Special Fund to the 1952 budget of the police department. After the women were selected and employed by the chief of police, they were assigned to work under his supervision and direction. Prior to employment, they were advised that they were not entitled to pension rights, nor to compensation except for those days when they actually worked; that they had no employment security; and that they could be discharged without cause or hearing. They are paid $2.50 for each day they actually work. They are required to be present at designated street crossings for traffic direction while children are assembling and dispersing from school. Most of them work two hours per day, a few three. They are not subject to call at any hour except when school is opening or closing. They are not allowed to carry weapons of any sort. They have no arresting power except as private citizens. It is their duty to report law violations which occur in their presence to the desk lieutenant on duty at police headquarters. They are supplied with a cap and badge by the city, but are required to furnish their own uniforms. They direct traffic while children are crossing streets on school days only. They perform no other duties. They are paid from an appropriation which is made for part-time policewomen. The court found and decreed that the employment of part-time policewomen and payment of their salaries without compliance with the provisions of the Civil Service Act of 1918 was beyond the plaintiff's lawful authority. The plaintiff contends that these part-time policewomen are city employees who are not covered by the provisions of the Civil Service Act of 1918. This position is tenable. By express terms, the act deals with and applies only to the personnel of the city's fire and police departments. While these employees of the city are called "policewomen," they are in point of fact not police officers. They are not clothed with authority to perform usual and ordinary police duties. Had they been called "child-safety employees," it is very probable that this controversy respecting their status would not have arisen. They do not have any of the employment protection and security

which the Civil Service Act provides for policemen or for other employees of the police department. They are employed on a part-time basis. They are not eligible for promotion to other positions in the police department on records of merit, efficiency, conduct, and seniority. They may be discharged from employment without cause or hearing. They are not entitled to city pension benefits. While they work under the supervision and direction of the chief of police, they are not members of the police force or employees of the police department having civil-service status. Hence, as to this, we hold that the trial judge erred.

*Judgment reversed. All the Justices concur.*