STATE EX REL. MORSE, Appellant, vs. CHRISTIANSON and others (Board of Trustees of Wisconsin Retirement Fund), Respondents.

*September 18—October 7, 1952.*

For the appellant there were briefs by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland.*

For the respondents there was a brief by the *Attorney General* and *J. R. Wedlake,* assistant attorney general, and oral argument by *Mr. Wedlake.*

BROADFOOT, J. To properly determine the question presented by this appeal, we must construe secs. 66.90 to 66.919, inclusive, of the statutes, and in particular the following:

66.906 (3) (a) *"Alternative retirement annuities.* (a) Notwithstanding any other provision of sections 66.90 to 66.919, any participating employee who is *eligible to receive an ordinary retirement annuity under section 66.906 (2)* may elect, in lieu of such annuity, to take the actuarial equivalent thereof as a retirement annuity *payable monthly for the life of the participating employee as the annuitant,* with a guaranty of one hundred eighty monthly payments, and in the event of his death before one hundred eighty monthly payments have been made, the *remainder* of the one hundred eighty monthly payments shall be *continued* to one beneficiary or divided as specified by the participating employee, and equally if not specified, between two or more beneficiaries designated by such employee, until payments shall have been made for one hundred eighty consecutive months after such annuity began." (Italics supplied.)

66.906 (3) (e) "Whenever a participating employee elects to take an annuity provided for under this subsection, then upon the death of such employee, no death benefit shall be payable under the provisions of section 66.908 (2) (c)."

66.908 (2) (a) "Upon the death of any employee while in the employment of any participating municipality, or during the period following the termination of the employment of any employee eligible on the date of termination for a

retirement or disability annuity from whom the board had received an application for such respective annuity within thirty days of the date of termination of employment, but who died before such application was acted upon by the board, the sum of: 1. The accumulated normal credits of such employee on the date of death, or $500, whichever is the greater, and 2. the accumulated additional credits of such employee on the date of death."

The plaintiff, as the beneficiary named in said application, claims the annuity elected by her husband in his application by virtue of the provisions of sec. 66.906 (3) (a), Stats. The plaintiff contends that Mr. Morse had fully complied with all of the provisions of the law. As an employee of the state for many years, a participating employee under the terms of the statute, of proper retirement age, he had filed the proper application and furnished all of the necessary information to the defendants. There was nothing further for him to do. It is contended that the law provided the benefits to be paid rather than any act by the defendants.

The defendants, on the other hand, call attention to certain words in said subsection that are italicized above. They claim that the applicant must have been eligible to receive an ordinary retirement annuity, and that under the definition of the word "annuity" in sec. 66.901 (14), Stats., some payment must have been made to the applicant during his life; that because of his death Mr. Morse never became an annuitant. They also emphasize the word "remainder" and argue that some payment must be made to the applicant if there is to be a remainder for the beneficiary. They quote the definition of remainder as "something left after a subtraction." They make the same argument as to the word "continued" and say that no continuation of monthly payments can be made to a beneficiary under the act unless and until the applicant has received one or more annuity payments. The defendants also call attention to the provisions of sec. 66.906 (3) (e), and state that the legislature, by expressly excluding the applica-

tion of sec. 66.908 (2) (c), clearly intended that sec. 66.908 (2) (a) is applicable and that, the applicant having died before the application was acted upon by the board, the beneficiary is entitled only to the death benefits provided by said section.

If, in determining the legislative intent, we are confined to a strict, literal, and narrow definition of the words used, there is logic in the arguments of the defendants. However, we feel that the act should be studied in its entirety and that an ordinary, common-sense meaning should be given to the various sections and to the words used therein to make them effective to carry out the general plan.

The return to the writ of certiorari does not show any action of the defendants upon the application. The petition, however, contains an allegation that the only attention by the defendants to the application is reflected in the minutes of a meeting held September 30, 1948, reading as follows:

"The executive director informed the board that the interpretation of the law has been that when an application for retirement annuity with the one hundred eighty-payment option is pending, and the person dies before the board meets, the annuity cannot be approved since the individual must be alive when the application is approved. Retirement applications of this type have not been presented to the board for approval. He further reported that two test cases may be brought to court. The legal advisor stated that he believed the position taken by the Fund is correct, although the court may take a different attitude, since theoretically by postponing meetings the board could deprive a person of a considerable sum."

These minutes indicate that the board recognized that the law was not entirely clear. However, the defendants were trustees administering public funds and in case of doubt as to the proper interpretation of the law it was their duty to have the law construed by the courts before making expenditures, unless clearly legal. They are to be complimented

rather than criticized for the stand they have taken in the matter of the application.

In order to properly construe the various provisions of the laws of 1947 affecting the Wisconsin Retirement Fund and to determine the intention of the legislature in adopting the different provisions thereof, it will be necessary to review, as briefly as possible, the history of this legislation.

The 1943 legislature adopted two separate retirement plans for public employees. One of these was known as the State Employees Retirement System. This law was embraced within the provisions of secs. 42.60 to 42.70 of the statutes of 1943. One of the purposes of the act was declared to be "the payment of annuities to state employees or to their beneficiaries." This act provided for the payment of two forms of annuities, one "a straight life annuity" and the other "an annuity payable to the member during his life and a survivorship annuity payable to his spouse after the death of the member." Another act, contained in sec. 66.90, Stats. 1943, set up the Wisconsin Municipal Retirement Fund. This act provided "for the payment of annuities and other benefits to employees and to beneficiaries of employees of municipalities in the state" and was limited to the employees of cities and villages. The act provided for the payment of retirement annuities, reversionary annuities, and disability annuities, as well as certain death benefits. There was no provision for death benefits in the State Employees Retirement Act. In the Municipal Employees Retirement Act, retirement annuities were straight life annuities, payable for the life of the member; reversionary annuities were annuities payable to a beneficiary from additional credits in the fund contributed by the employee; and disability annuities were annuities paid to employees during periods of total disability.

The 1945 legislature made some minor amendments to the acts and adopted a joint resolution providing for an interim legislative committee to give further study to the vari-

ous retirement systems for public employees, including those already in effect for policemen, firemen, game wardens, and others. This committee recommended the merger or consolidation of several of the retirement systems so far as they affected new employees and the liquidation of some of the then established retirement funds. Several changes were then made in the existing law by the 1947 legislature. So far as these changes are material in the present case, the changes were as follows:

By ch. 99, Laws of 1947, published May 16, 1947, sec. 66.90 (13), Stats., the death-benefits section of the Municipal Employees Retirement Act, was amended.

By ch. 206, Laws of 1947, published June 6, 1947, the State Employees Retirement Act was merged with the Municipal Employees Retirement Act, and the name was changed to the Wisconsin Retirement Fund.

As thus amended, the act provided, as did the original Municipal Employees Retirement Act, for the payment to employees who qualified, of retirement annuities, reversionary annuities, and disability annuities. No provision was made for the payment of annuities to the member during his life with a survivorship annuity payable to his spouse after the death of the member, except reversionary annuities. Whether this was an oversight does not appear, but in any event by ch. 556, Laws of 1947, published August 23, 1947, sec. 66.90 (10a), Stats. [now sec. 66.906], was created, and the definition of the word "annuity" in sec. 66.90 (3) (n) was amended by inserting the words "except as provided in subsection (10a)," in two separate places.

Ch. 362, Laws of 1947, effective upon publication of the 1947 session laws, renumbered the various subsections of sec. 66.90, Stats. The renumbering was done by the revisor of statutes under his statutory authority in preparing the 1947 statutes.

A reading of sec. 66.908, Stats., will show that the death-benefits section is divided into two parts. Sub. (1) describes the persons entitled to death benefits, and sub. (2) prescribes the amount of the death benefits to be paid. It should be remembered that there was no death-benefits section in the State Employees Retirement Act, and that the amendments thereto by ch. 99, Laws of 1947, were made to apply to the three types of annuity provided for by the Municipal Employees Retirement Act, namely, retirement annuities, reversionary annuities, and disability annuities. In the case of ordinary retirement annuities or disability annuities, death terminated the payment thereof. No one had any right to receive anything in addition even though the full amount contributed by the participating employee had not been expended. In the case of the reversionary annuity, the fund for the payment thereof was contributed entirely by the municipal employee. It is apparent that the death-benefits section was adopted with those provisions in mind.

The provision for the payment of the one hundred eighty monthly guaranteed annuity was in the last enactment of the legislature during 1947 concerned with this subject. In view of that fact, and because there was necessarily some confusion in the merging of the various plans by different acts of the legislature, the opening words of sec. 66.906 (3), Stats., are significant. Those words are the following: "Notwithstanding any other provision of sections 66.90 to 66.919, any participating employee . . . may elect, . . ." Also it seems under the circumstances that special significance must be given to the words "with a guaranty of one hundred eighty monthly payments." The word "notwithstanding" is defined in Webster's dictionary to mean "without prevention or obstruction from or by" and also to mean "in spite of."

What was the intention of the legislature by its last act of the session upon the subject? With full knowledge that several acts had been adopted and that there was more than

a possibility that all of the sections would not be in harmony, it declared it to be its intent that, in spite of anything to the contrary in its prior enactments, and without prevention or obstruction by any prior enactment not in harmony therewith, it wished to guarantee an annuity for a period of one hundred eighty months to the participating employee if living, or his named beneficiary upon his death, provided only that the participating employee made his election to take this alternative annuity within the time prescribed.

In view of the general purpose of the retirement plan adopted by the legislature, we can only conclude that the plaintiff is entitled to the benefits elected for her benefit by her husband.

The defendants conclude that an application is dormant or dead until their formal action thereon. By implication, at least, they concede that if Mr. Morse had lived until June 28, 1948, the application would have been approved and payments ordered. It seems clear they would have had no other choice. This weakens, if it does not destroy, their contention that one or more payments must be made to the retired employee so that there will be a "remainder" to be expended in "continued" payments.

The defendants finally contend that mandamus will not lie because passing upon the application involves discretionary action on their part, and because sec. 66.918 (3), Stats., provides that actions, decisions, or determinations of the board of trustees shall be reviewable only by a writ of certiorari. In this case the board took no action and made no decision or determination on the application. Thus the statute referred to does not apply.

In line with the defendants' statement contained in their minutes of September 30, 1948, they could defeat the rights of applicants by failing to act or deferring action until an applicant died. This is not an intimation that these defendants would follow such a course, but in case some future board should do so mandamus should lie unless some remedy other

than certiorari is provided by statute. The record contains data sheets prepared by defendants' employees that show that the information contained in the application had been verified and it was ready for formal approval when Mr. Morse died. Their only duty was a ministerial one, and mandamus was a proper remedy.

No facts appear to be in dispute. The sole question here involves a construction of the statutes. Our interpretation obviates any further hearing before the trial court.

*By the Court.*—Judgment reversed. Cause remanded with directions to issue a peremptory writ of mandamus in conformity with this opinion.