43392. DINKLER et al. v. JENKINS, Chief of Police, et al.

240

ARGUED JANUARY 11, 1968—DECIDED JUNE 26, 1968—
REHEARING DENIED JULY 31, 1968—

*Wesley R. Asinof, Leon S. Epstein,* for appellants.

*Arthur K. Bolton, Attorney General, William L. Harper, John A. Blackmon, H. Perry Michael, Melvin E. Thompson, Jr., Assistant Attorneys General, Harold Sheats, John Tye Ferguson, Lewis R. Slaton, Solicitor General, J. Walter LeCraw, William E. Spence,* for appellees.

EBERHARDT, Judge. The question raised by this appeal is whether plaintiffs may lawfully pursue their businesses of selling

liquor for beverage purposes by the drink for consumption on the premises under their licenses from the city between the hours of midnight Saturday and 2 a.m. Sunday morning. The answer to this question must be determined by consideration of several State statutes and the municipal ordinance involved. For convenience in handling we set them out at the outset.

The first having a possible bearing on the case is the old tippling house statute, *Code* § 26-6105 (Ga. L. 1865-6, p. 233), which provides: "Any person who shall keep open a tippling house on the Sabbath day or Sabbath night shall be guilty of a misdemeanor." This statute, while archaic in language, is still in force in this State, the phrase "tippling house" referring to "one where intoxicating beverages, including beer and liquor, are served in small quantities to be drunk on the premises." *Bolden v. State,* 88 Ga. App. 871, 874 (78 SE2d 368). At this point in the history of our State, it was not unlawful to operate "tippling houses" but it became so only if operated in contravention of the statute. *Werner v. State,* 51 Ga. 426, 427. In reviewing the history of our liquor laws, the brief of defendants Sheriff of Fulton County and Solicitor General of the Atlanta Judicial Circuit point out that "the original prohibition of the Trustees of the Colony of Georgia against 'rum, slaves and lawyers' was soon lifted, and throughout most of the life of the Colony and the early history of our State there were few, if any, regulations on the sale of spirituous liquors. However, in 1907 (Ga. L. 1907, p. 81) general prohibition against almost all types of alcoholic beverages was imposed by the General Assembly. This prohibition continued in force for almost thirty years. However, in 1935, first the sale of malt beverages (Ga. L. 1935, p. 73) and then the sale of wine (Ga. L. 1935, p. 492) were authorized. Almost three years later the sale of spirituous liquors was also authorized (Ga. L. 1937-38, Ex. Sess., p. 103)." Some of the salient features of prohibition in this State, through the Act of 1938, may be found in the editorial note at the beginning of *Code Ann. Title* 58, Intoxicating Liquors.

The Act of 1938 (Ga. L. 1937-38, Ex. Sess., p. 103; *Code Ann. Ch.* 58-10), known as the "Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors," is the second statute

which must be considered on this appeal. Particular portions of this Act will be cited as they appear in *Code Ann. Title* 58. It provides for the exemption (see *Code Ann.* §§ 58-124, 58-306, 58-1078) from the general prohibition laws (see *Code Ann. Ch.* 58-1, 58-2, and 58-3) on a local option basis of counties where the voters vote in favor of permitting the manufacture, sale and distribution of alcoholic beverages and liquors, including distilled spirits, in accordance with the provisions of the Act. *Code Ann.* §§ 58-1004, 58-1008. The only types of licenses authorized (*Code Ann.* § 58-1023) are those to manufacturers (*Code Ann.* § 58-1024), wholesalers (*Code Ann.* § 58-1025) and retailers (*Code Ann.* § 58-1026). The retailer's license authorized only what is generally known as a "package stores," and the sale of liquor by the drink for consumption on the premises remained unlawful not only because such sales were not exempted by the Act from the general prohibition laws but also were clearly excluded from the operation of the Act. *Code Ann.* § 58-1026 provides: "A retailer's license shall authorize the holder to sell only in the original and unbroken package or packages, which package or packages shall contain not less than one-half pint of distilled spirits or alcoholic beverages each, and shall not permit the breaking of said package or packages on the premises where sold, and shall not permit the drinking of the contents of said package or packages on the premises where sold." See also *Code Ann.* § 58-1011 (f) defining "retailer" or "retail distributor." *Code Ann.* § 58-1027 provides: "It shall be unlawful for any retailer, as defined in this Chapter, to allow or permit the breaking of said package or packages on the premises where sold or to allow or permit the drinking of the contents of said package or packages on the premises where sold and any violation thereof shall be a misdemeanor, and the offender thereof shall be guilty of a misdemeanor, and, upon conviction, be punished as for a misdemeanor." In addition *Code Ann.* § 58-1022 (b) provides that it shall be mandatory on the State Revenue Commissioner, charged with the administration of the Act (*Code Ann.* § 58-1012), to revoke the license issued by him to anyone convicted of selling or serving spirituous liquors on the premises in unbroken (broken?) packages of any size; and *Code Ann.*

§ 58-1062[1] prohibits females from working in any liquor store as hostess, bar maid, or in any other manner.

The two provisions of the 1938 Act relating to Sunday sales of liquor are found in *Code Ann.* §§ 58-1079 and 58-1060. The former provides: "It shall be unlawful to sell any liquor in any of the counties specified by this Chapter [Act] between the hours of 12:00 o'clock, midnight, on Saturday night, until the hour of 12:00 o'clock, midnight, on Sunday night, at any time and at any time on election days. It is the purpose and intent of this section to prevent the sale of liquor on Sunday and election days, and any violation of same shall be a misdemeanor by the buyer and/or the seller." The latter section provides: "Any person who shall sell or offer for sale any spirituous liquors as herein defined on Sundays or elections days shall be guilty of a misdemeanor and upon conviction shall be punished as for a misdemeanor as provided in section 27-2506."

By Ga. L. 1964, p. 771 (*Code Ann.* § 58-1083), the 1938 Act was amended by renumbering (as it is numbered in the official Acts) Section 31, the repealer clause, as Section 32, and by inserting a new section 31. This new section reads: "(a) *Anything in this Chapter [Act] to the contrary notwithstanding,* every county in the State of Georgia where the sale of distilled spirits or alcoholic beverages is authorized by law ['wet' counties by referendums under the 1938 Act] and which such counties have a population of 40,000 or more, according to the United States decennial census of 1960 or any future such decennial census, and any city or municipality in that part of such cities lying within such counties may, through proper resolution or ordinance, authorize the issuance of licenses to sell distilled spirits or alcoholic beverages for beverage purposes by the drink, said sales to be for consumption only on the premises.

"(b) Every county and city as set forth in this section shall have the full power and authority to adopt all reasonable rules and regulations governing the qualifications and criteria for issuance of any such license and shall further have the power

---

[1]Repealed by Ga. L. 1968, p. 287.

and authority to promulgate reasonable rules and regulations governing the conduct of any licensee provided for in this section, including but not being limited to the *regulation of hours of business,* types of employees, and other matters which may fall within the police powers of such municipalities or counties.

"(c) Those persons who are duly licensed as wholesalers under the provisions of this Chapter [Act] shall be authorized to sell to any person or persons licensed as provided in this section, distilled spirits at wholesale, and the persons so licensed under this section shall be authorized to purchase such distilled spirits from a licensed wholesaler at wholesale." (Emphasis supplied.)

The remainder of the 1964 Act (*Code Ann.* § 58-1083 (d, e)) makes provision for a special referendum election in the "wet" counties and municipalities referred to in order to determine whether the Act shall become effective in such areas.

Upon a favorable vote the City of Atlanta enacted a comprehensive ordinance, attached to the petition as an exhibit, "Governing the Licensing and Regulation of the Sale and Consumption of Alcoholic Beverages in the City of Atlanta." Among other things the ordinance defines "License" as "the authorization by the governing authority of the City of Atlanta to engage in the sale for consumption on the premises of alcoholic beverages." Various rules and regulations are set forth governing the license for the sale of spirituous liquors by the drink, and Sections 30(d) and (g) provide as follows: "(d) Licensees for the sale of spirituous liquors by the drink or for the operation of a bottle house[2] on their premises shall not engage in the sale or permit the consumption of spirituous liquors between the hours of 2:00 a.m. Sunday and 9:00 a.m. Monday and between the hours of 2:00 a.m. and 9:00 a.m. on other days. . ."

---

[2]"Any place of business open to the public or any private club which allows patrons or members to bring in and consume alcoholic beverages on the premises, and where a substantial portion of such business is the providing of set-ups and mixes for the use of patrons or members in the consumption of alcoholic beverages." Ordinance, § 1.

"(g) Except as hereinabove provided, no licensee for the sale of spirituous liquors by the package at retail shall permit his place of business to be open for the sale of alcoholic beverages or to sell alcoholic beverages on Sundays, election days, Christmas day and Thanksgiving day. All other licensees shall not permit their places of business to be open for the sale of alcoholic beverages or sell alcoholic beverages on Sundays, election days and Christmas day."

We turn now to the contentions made in the case.

■ *The Ordinance.* It is contended by defendants that the ordinance, since it only prohibits the sale of alcoholic beverages between certain hours, cannot be construed as permitting by implication the sale of beverages during the hours not prohibited. If this contention be sound, then the entire ordinance is meaningless since the sale of alcoholic beverages would never be permitted. We cannot indulge in such sophistry. The ordinance provides that a license constitutes the authorization from the city to engage in the sale of alcoholic beverages, and the regulations in regard to hours of sale qualify and modify the authorization given. It is beyond question that the ordinance authorizes the sale of alcoholic beverages by the drink until 2 a.m. on Sunday.

■ *The Tippling House Statute.* It is contended that this statute forbids selling liquor by the drink between 12 midnight on Saturday and 2 a.m. on Sunday. *Bolden v. State,* 88 Ga. App. 871, supra, affirmed a conviction for keeping open a tippling house in violation of this statute (*Code* § 26-6105), and from page 873 of the opinion it appears that the raid on the premises occurred at about 2 a.m. on Sunday morning. However, the question was not raised or decided in that case as to whether the statute covers the hours between 12 midnight on Saturday night until 2 a.m. on Sunday, and, in the absence of any other authority in our courts, we regard the question as an open one.

The tippling house statute uses the phrase "Sabbath day or Sabbath night" to designate the time within which the house must be closed. Does this cover the period of time from midnight Saturday until dawn Sunday?[3]

---

[3]In *Gunn v. State,* 89 Ga. 341 (15 SE 458), the defendant was indicted for hunting on *Sunday* in violation of a statute

Generally the word "day," when not qualified, means a calendar or civil day consisting of 24 hours from midnight to midnight. See Booker v. Chief Engineer of Fire Dept. of Woburn, 324 Mass. 264 (85 NE2d 766); People v. Breckenridge, 16 Misc. 2d 704 (190 NYS2d 122); Fisk Discount Corp. v. Brooklyn Taxicab Trans. Co., 270 App. Div. 491 (60 NYS2d 453); (*Rose v. State*, 107 Ga. 697 (33 SE 439) (election day includes period from 12 midnight to 12 midnight); *City of Hapeville v. Jones*, 194 Ga. 57 (a) (20 SE2d 599) (twenty days to amend are calendar days); *Henderson & Son v. Reynolds*, 84 Ga. 159 (2a) (10 SE 734, 7 LRA 327) (standard of time in computation of a day is from 12 midnight to 12 midnight rather than some arbitrary and artificial standard, such as railroad time); 11 Words & Phrases 108, "Day." Thus if the words "Sunday" or "first day of the week, commonly called the Lord's day, or any part thereof" are used in the sense of an entire 24-hour civil day of the week, it extends from 12 midnight to 12 midnight. See State v. Green, 37 Mo. 466; Shaw v. Dodge, 5 N. H. 462; 40A Words & Phrases, Sunday, pp. 309-310.

However, where the words "Sabbath day," "Lord's day" or "Sunday" are used without clear reference to a 24-hour civil or calendar day, different considerations come into play. As summarized in State v. Green, supra, p. 469: "At common law the natural and civil day consists of twenty-four hours, from midnight to midnight, and the artificial or solar day extends from sunrise to sunset. (Co. Litt. 135, o.) The Sabbath or Lord's day, as one of the *dies fasti*, having its origin in the Christian Church, has sometimes been held to mean, both at common law

---

making it a misdemeanor to hunt on the *Sabbath day*. On appeal defendant contended that "there was no sufficient evidence certainly and definitely to warrant the conviction, . . . it not appearing that the *Sunday* to which the evidence pointed as showing that he was on that day engaged in hunting with his gun and dogs, was the *Sabbath* day." (Emphasis supplied.) It was held in headnote 3 that " 'Sunday' and 'the Sabbath day' are synonymous in the legislation of Georgia." Apparently the extent of the holding is that the Sabbath falls on Sunday rather than on some other day of the week.

and under the statutes of some of the States, the artificial or solar day, extending from morning light to the setting sun. (Co. Litt. 135; Keilw. 75; Fox v. Abel, 2 Conn. 541; Hiller v. English, 4 Strobh. [S. C.] 486)." The subject was thoroughly explored in the cited cases of Fox v. Abel (1818) and Hiller v. English (1848), supra, where religious and common law authorities were examined at length. Trumbull, J. concludes: "From these authorities it seems evident, that neither by the Scriptures, nor by the common law, was the time after midnight and before the dawn of the morning of the *Sabbath Day*, ever considered as included in, or constituting any part of, holy time." Fox v. Abel, 2 Conn. 541, 547. On the same page he asserts: "By the *Lord's day*, in the English statutes, and the language of the elementary writers, is technically meant the solar day, commencing at sunrise: and it is certain, that no part of the preceding night was ever included in it." Thus the Connecticut court held, in an action of assault and battery and false imprisonment, in which defendants pleaded justification in serving civil process, that "The *Lord's day*, on which service of civil process is prohibited by statute, comprises the *solar* day only" and does not include the period of time between midnight Saturday and dawn Sunday, when the defendants levied execution upon the body of plaintiff and committed him to prison. Similarly, the South Carolina court, supra, in holding that a verdict may be received and published between midnight Saturday and dawn Sunday, stated in the headnotes that "Although Sunday, when mentioned in a statute, begins and ends as another civil day, to it, as a common law festival, and as a holyday established by the usage of various sects of Christians disagreeing as to its beginning and end, common law prohibitions extend only from sunrise 'till sunset."

In the case at bar had the statute used only the phrase "Sabbath day" we might be confronted with the problem of determining whether the phrase should be construed as referring merely to a civil day of 24 hours or, as the above cases indicate, to a special period of time defined and explained by its long history. The phrase in the tippling house statute, however, is "Sabbath day or Sabbath night;" and since the Sabbath is deemed to be

Sunday in this State (see *Gunn v. State*, 89 Ga. 341, supra, note 1), it only remains to be determined what is meant by the words "day" and "night."

"Night" is defined in Webster's New International Dictionary (2d ed., unabridged) as "That part of the natural day when the sun is beneath the horizon, or the time from sunset to sunrise; esp., the time from dusk to dawn, when no light of the sun is visible. Cf. DAY, 1." "DAY, 1." as just referred to defines "day" as "The time of light or interval between one night and the next; the time between sunrise and sunset, or from dawn to darkness." Hence the word "day," when contrasted with the word "night," can mean only daylight hours or the hours between sunrise and sunset. As succinctly stated by Smith, J., in Fox v. Abel, 2 Conn. 541, 551: "We here find it made penal to convene and remain at public houses, drinking, or idly spending time, *on Saturday night, after sunset, or on the Lord's day, or on the evening following.* Now, after reading this section, will anyone ask what period of time was intended by the *Lord's day,* in this statute? Is it not a period altogether distinct from the evening? If not, why add a provision for the evening?"

The question thus boils down to whether 2 a.m. following midnight on Saturday is a part of the Sabbath night. Commonwealth v. Newton, 25 Mass. (8 Pick.) 234, is clear authority that it is not. That case held, on an indictment against a victualler for keeping his shop open on the evening of the Lord's day, "that, by the words, 'any part of the Lord's day or evening,' the legislature intended Sunday and the evening immediately following sunset on that day; and not the evening immediately preceding Sunday." A contrary holding in Kroer v. People, 78 Ill. 294, cannot be approved, since that case would mean that Sunday has two nights. Instead we approve the contention of the defendant in that case that the words "Sabbath night" mean the period of darkness *following* the Sabbath day. This construction is in accordance with the above-cited authorities and with the customary and ordinary meaning attributed to such phrases. As Shakespeare has it, "To thine own self be true, And it must follow, as the night the day, Thou canst not then be false to any man." Hamlet, Act i, Sc. 3, l. 78. Or Milton:

"Darkness now rose, As daylight sunk, and brought in low'ring Night, Her shadowy offspring."

We can only conclude that the phrase "Sabbath day or Sabbath night" as used in the tippling house statute (*Code* § 26-6105) covers the period from dawn Sunday morning until midnight Sunday night. Consequently it is not relevant to this appeal.

■ *The Act of 1938.* The two sections of this Act prohibiting Sunday sales of liquor cannot be construed as laws of general application prohibiting the sale of liquor by the drink between midnight Saturday and 2 a.m. Sunday since they apply only to the sales authorized by that Act. Prior to the Act it was illegal to sell liquor *at any time* under the general prohibition laws, and obviously the two Sunday-sales sections, contained in the Act permitting sale of liquor on a local-option basis, apply only within the framework of that Act. This is indicated in the prohibitory sections themselves. *Code Ann.* § 58-1079 prohibits the Sunday sale of liquor "in any of the counties specified by this Chapter [Act]." *Code Ann.* § 58-1060 prohibits the sale of "any spirituous liquors as herein defined," referring to the Act's definition of "spirituous liquors," contained in *Code Ann.* § 58-1011.

Since these two sections apply only to the sale of liquor *authorized* by the Act, it is important to note what sales the Act *does not authorize*. As previously seen it does not authorize the sale of liquor by the drink, such sales being illegal *at any time* both before and after passage of the Act. See *Raines v. State*, 96 Ga. App. 727 (101 SE2d 589). Thus the legislature, in enacting the Act of 1938, had no occasion to, and in fact did not, make the Sunday prohibitory sections applicable to the sales of liquor by the drink since these were not authorized by the Act and remained illegal at any time and at any place.

The question then is whether the Act of 1964, authorizing for the first time the sale of liquor by the drink, meshed itself into the Act of 1938 in such a way as to become subject to the Sunday-sales prohibitions. It does not upon its face, and perhaps no further discussion is needed. However, there are several cogent considerations which support the view that the 1964 Act,

*to the extent covered by that Act,* is a self-contained treatment of the subject matter of liquor sales by the drink.

The 1938 Act provides (*Code Ann.* § 58-1023) that "Licenses which may be issued under authority of this Chapter shall be as set forth in sections 58-1024 to 58-1026." As previously seen these comprise only manufacturer's, wholesaler's, and package retailer's licenses, and the regulatory provisions of the 1938 Act can apply only to these types of licenses. The 1964 Act does not amend § 58-1023 so as to refer to a new section providing for licenses for the sale of liquor by the drink, nor does it amend or repeal §§ 58-1026, 58-1027, 58-1022(b), or 58-1062 which, as we have seen, exclude sales by the drink from the operation of the 1938 Act. Had some such procedure been followed we might well conclude that licenses for the sale of liquor by the drink were merely a fourth category of license fitted into the whole regulatory framework of the 1938 Act.

But on the contrary, the 1964 Act does not purport to change, to repeal, or to fit its provisions into any part of the 1938 Act but deals with a subject matter not previously covered by the Act; and, in doing so, it begins with the words, *"Anything in this Act to the contrary notwithstanding,"* and then proceeds to add an entirely new section seemingly dependent upon the 1938 Act only for a definition of counties where the sale of distilled spirits or alcoholic beverages is authorized ("wet" counties). Hence we can only conclude that the Sunday-sale prohibitions of the 1938 Act did not apply, when enacted, to the sale of liquor by the drink, and that the 1964 Act does not extend the 1938 prohibitions to the sale of liquor by the drink authorized by the latter Act. Thus there is no conflict between the provisions of the 1964 Act authorizing and empowering the municipalities to regulate the hours of business of licensees selling liquor by the drink and the Sunday-sales prohibitions of the 1938 Act.

If there could be any question of a conflict between the hours-of-sale provisions of the two Acts, however, the use of the words "Anything in this Act to the contrary notwithstanding" would render the hours-of-sale authorization of the 1964 Act supreme over the Sunday-sales prohibitions of the 1938 Act.

This phrase has a much broader meaning than a repealing clause or any other such language. Article 6, Clause 2 of the Constitution of the United States uses almost the same phraseology. It makes the Constitution of the United States and the laws passed pursuant thereto, and all treaties made, under the authority of the United States, the supreme law of the land, "anything in the Constitution or laws of any State to the contrary notwithstanding." By this phrase a treaty made by the President of the United States and ratified by the Senate must be respected and honored even though in conflict with State constitutional provisions. When phrases of this type are used in statutes, they mean that the statute in which the phrase is used takes precedence over, and is intended to exclude and not include, the operation of other statutes which may not be in harmony therewith. Theodore Roosevelt Agency v. General Motors Acc. Corp., 156 Col. 237 (398 P2d 965); State v. Board of Education, 170 Ohio St. 415 (165 NE2d 918); State v. Christianson, 262 Wis. 262 (55 NW2d 20).

Defendants contend that since the phrase appears in Subsection (a) of the section added by the 1964 Act, it is operative only on Subsection (a) and not on Subsection (b) where the authorization as to regulation of hours of sale is found. The import of this argument is that each of the remaining Subsections (b), (c), (d) and (e) would have to begin with the phrase in order for it to bring those sections within its ambit. A cursory reading of the 1964 Act readily reveals that the remaining subsections are dependent upon and relate to the authorization given in Subsection (a) to issue licenses for the sale of liquor for beverage purposes by the drink for consumption only on the premises, and to repeat the phrase in each of the subsections would be an exercise in redundancy. Ga. L. 1966, p. 340, also amends the 1938 Act in the same manner as did the 1964 Act, by adding a new section thereto, so as to authorize the sale of distilled spirits or alcoholic beverages for beverage purposes on the premises in certain counties and municipalities not covered by the 1964 Act. The only significant differences between the 1964 and 1966 Acts are that different counties are involved and there is no referendum requirement in

the 1966 Act. Otherwise Subsections (a), (b) and (c) of the 1964 Act are set forth practically verbatim in the 1966 Act with the exception that "(a)," "(b)" and "(c)" are not inserted between the sentences. The section added by the 1966 Act begins: "Any provision of this or any other law to the contrary notwithstanding. . ." Certainly it cannot be contended that this phrase is operative only upon the sentence in which it is contained and not upon the succeeding sentences; and we are not prepared to say that the phrase contained in the 1964 Act has no reference to the succeeding sentences merely because "(a)," "(b)," etc. are inserted between those sentences. Such a construction would be strained, to say the least, particularly in view of the fact that the 1964 Act does not repeal, modify or change provisions of the 1938 Act not in harmony with provisions of Subsections (b) and (c) of the 1964 Act, such as those of the 1938 Act relative to administration, regulation, licensing and bonding by the State Revenue Commissioner (*Code Ann.* §§ 58-1012, 58-1022, 58-1045). Under the 1964 Act those matters appear to be left to the local governments. In particular, Subsection (c) of the 1964 Act authorizes wholesalers to sell to persons "licensed as provided in this section," referring to the *local* license which is the only one required under Subsection (b), whereas wholesalers are allowed by the 1938 Act (*Code Ann.* § 58-1025) to sell only to holders of wholesale or package retail licenses which must be obtained from the Commissioner under the 1938 Act (*Code Ann.* § 58-1022). A further inconsistency between the 1938 Act and Subsection (b) of the 1964 Act occurs where the former (*Code Ann.* § 58-1062)[4] prohibits females from working in liquor stores as hostesses, bar maids, or in any other manner, whereas Subsection (b) of the 1964 Act provides that the local governments may prescribe rules and regulations governing the types of employees in the beverage-by-the-drink establishments, which would include females.

With this confusion and apparent conflict between Subsections (b) and (c) of the 1964 Act and the 1938 Act, and no attempt having been made to alter or modify the 1938 Act, the phrase

---

[4]Repealed by Ga. L. 1968, p. 287.

"Anything in this Act to the contrary notwithstanding" in the 1964 Act must necessarily apply to the Act of 1938, thereby making Subsections (b) and (c) of the 1964 Act controlling as to their subject matter. As stated in State v. Board of Education, 170 Ohio St. 415, supra: " 'Notwithstanding' is defined in Webster's New International Dictionary (2d Ed.) as meaning "without prevention or obstruction from or by; in spite of.' [citations omitted.] It is axiomatic in statutory construction that words are not inserted into an Act without some purpose. The General Assembly enacted Sections 3311.26 and 3311.261, Revised Code, at the same time. With full knowledge that these acts had been adopted and that conflicts might arise thereunder, the General Assembly inserted the word 'notwithstanding,' and by so doing clearly indicated its intent that proceedings under Section 3311.261, Revised Code [containing the phrase 'Notwithstanding sections 3311.22,' etc.], should take precedence over pending proceedings previously instituted under the other enumerated sections." To the same effect see Theodore Roosevelt Agency v. General Motors Acc. Corp., 156 Col. 237, and State v. Christianson, 262 Wis. 262, supra.

We conclude that in the event of any conflict between the Act of 1938 and that of 1964, the 1964 Act must take precedence. As previously indicated, however, we see no conflict between the Sunday-sales prohibitions of the 1938 Act and the hours-of-sale authorization of the 1964 Act, since the legislature has seen fit to give separate and different treatment to "package" sales and sales by the drink.

■ *Constitutional Questions.* It is urged that courts in construing statutes susceptible of two meanings, one of which would be unconstitutional, should adopt the construction which would render them constitutional. While we do not think the 1964 Act is susceptible of two meanings in regard to the hours of sale authorization, we nevertheless consider the constitutional arguments.

One group of arguments attacking the 1964 Act assumes as the major premise that the tippling house statute and the Sunday-sales prohibitions of the 1968 Act are laws of general application prohibiting the sale of liquor by the drink between

midnight Saturday and 2 a.m. Sunday. Since in our view the premise is not true, the 1964 Act authorizing such sales does not empower the City of Atlanta to adopt rules and regulations pertaining thereto which are in conflict with other laws of the State.

Nor do we think that it is a denial of the equal protection of the laws to permit bottle house operators[5] and licensees for the sale of liquor by the drink for beverage purposes for consumption only on the premises to remain open for business from midnight Saturday until 2 a.m. Sunday morning while "package store" operators must close at midnight Saturday, or to allow licensees other than package store operators to remain open on Thanksgiving. See § 30 (g) of the ordinance, supra. It would appear to us that the business of package stores—selling liquor in the unbroken package to be taken away and consumed off the premises—is essentially a different one from that of selling liquor by the drink for beverage purposes for consumption only on the premises in night clubs, bars, restraurants, etc. Whatever may be the wisdom or desirability of the classification system and the rules and regulations applicable thereto, we cannot say that the classification is arbitrary upon its face or that there is no reasonable basis for it. A different question might be presented if there were patent discrimination as to hours of sale of package liquor between businesses selling package goods only and businesses selling by the drink *and* in the package. See Mayhue v. City of Plantation, 375 F2d 447 (5th Cir.).

■ *Conclusion.* Under the view we have taken the 1964 Act does not raise any question of repeal by implication. The tippling house statute does not cover the period of time from 12 midnight Saturday until 2 a.m. Sunday, and the Sunday-sales prohibitions of the 1938 Act do not apply to sales by the drink as authorized by the 1964 Act. The 1964 Act authorizes the municipalities involved to regulate the hours of business of sale-by-the drink licensees, and the ordinance of the City of Atlanta permitting such licensees to remain open until 2 a.m. on Sunday is a valid exercise of the authority conferred. Consequently, it was error to sustain the general demurrers and dismiss the petition.

---

[5]See note 2, supra.

*Judgment reversed. Hall, J., concurs both generally and specially. Whitman, J., concurs. Bell, P. J., and Quillian, J., concur in the judgment. Felton, C. J., Jordan, P. J., Pannell and Deen, JJ., dissent.*

ON MOTION FOR REHEARING.

■ It is argued that Division 3 of our original opinion holds by implication that other prohibitions contained in the 1938 Act, such as the sale of liquor to minors (*Code Ann.* § 58-1061), operation of liquor businesses in close proximity to schools and churches (*Code Ann.* § 58-1029), or the limitation as to the amount of license fees and taxes that may be imposed (*Code Ann.* § 58-1038), do not apply to those selling mixed drinks. Thus it is argued that a person could legally sell liquor to a minor on election day if he held a license under the 1964 Act rather than one under the 1938 Act.

This argument assumes that the local government has *failed to act* in accordance with its "power and authority to promulgate reasonable rules and regulations governing the conduct of any licensee provided for in this section, including but not being limited to the regulation of hours of business, types of employees, and other matters which may fall within the police powers of such municipalities or counties." In the case before us the city *has* acted and adopted a comprehensive ordinance providing for hours of sale, sales to minors, election days, etc. The extent of our holding in Division 3 is that the authority for such an ordinance actually enacted is found in the Act of 1964 which must be construed either in harmony with the Act of 1938 or as taking precedence over it to the extent of any conflict. We do not necessarily hold that any given provision of the 1938 Act may never be applicable to a sale-by-the-drink licensee— we simply hold that the 1964 Act governs where it is applicable and actually implemented by the local government.

■ The Commissioner also urges that we have overlooked *Code* § 26-6905, providing that "Any person who shall pursue his business or the work of his ordinary calling on the Lord's Day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." The Commissioner previously took the position in his supplemental brief that this Code section was not

involved in the appeal since the liquor laws deal specifically with intoxicating liquors and hence take precedence over other less specific laws such as the Sunday closing laws. We agreed and still agree with the Commissioner's former position.

But we have not overlooked this Sunday closing statute which itself contained exceptions—works of necessity and of charity—and there have been numerous subsequent statutes broadening these. For example, it was held that the operation of a motion picture theatre was neither a necessity nor a work of charity, even though the receipts were donated to charity works. *Albany Theatre Co. v. Short,* 171 Ga. 57 (154 SE 895); *Thompson v. City of Atlanta,* 178 Ga. 281 (172 SE 915). But in 1949 the General Assembly adopted an Act legalizing the operation of motion pictures, athletic events, games and contests on Sunday (*Code Ann.* §§ 26-6915, 26-6916), when licensed by the city or county where located. The same is true of the operation of automobile race tracks. *Worley v. State,* 79 Ga. App. 594 (54 SE2d 439). Thus the exceptions were enlarged.

If *Code* § 26-6905 is still viable it would appear that the Act of 1964 has *enlarged the exceptions,* just as was done concerning the operation of motion picture theatres, etc., and so even if we are in error as to when the Sabbath of the tippling house statute begins, we reach the same result, for this exception is under a general statute of later date and is the last legislative expression on the matter, and applies to both the tippling house statute and the Sunday closing law.

There is question as to whether *Code* § 26-6905 was not repealed by Ga. L. 1967, p. 479, portions of which were held unconstitutional in *Hughes v. Reynolds,* 223 Ga. 727 (157 SE2d 746), but leaving intact the severability clause and the *repealer* section, but we do not find it necessary to consider that.

*Motion denied.*

FELTON, Chief Judge, dissenting. At common law a day was "[t]he space of time which elapses between two successive midnights. 2 Bl. Comm. 141." Black's Law Dictionary, Fourth Edition, p. 473, third definition and citations. This is the law in Georgia since it has not been changed by statute. See also third definition given by Webster's New International Dictio-

nary, Second Edition. If there was a statute seeking to change the definition of a day it would seem that it would refer equally and without variance to *each* of the *seven days* of the week. So it seems that the reference in *Code* § 26-6105 to Sabbath day and Sabbath night cannot be construed to alter the definition of a day, referring to all seven or the Sabbath, singled out for special treatment, leaving part of the Sabbath hanging in air, a part of no day at all or hooked on to some other day. So this Code section covers the Sabbath, a day consisting of "the space of time which elapses between two successive midnights." Of course Sunday, synonymous with Sabbath, is not now considered as a religious day set apart by law but simply as a day of rest, according to the United States Supreme Court.

I do not think that the statement in the Act of 1964, *Code Ann.* § 58-1083, to wit: "Anything in this Chapter to the contrary notwithstanding" in Division (a) applies to anything or any other lettered section. The words quoted refer to the whole chapter of laws, not just those of the amendment added. The sole purpose of this quoted statement was to add to the existing law the right in certain municipalities to sell mixed drinks in addition to bottled drinks. Paragraph (b) of this Act, giving the municipalities the right to make rules and regulations including the right to regulate the hours of the sale of mixed drinks was not intended to permit the sale of mixed drinks on Sunday or the Sabbath, or to change the period of any day from the period recognized by the common law. A day is what the state law says it is and not what some religion considers to be in its opinion a Holy Day. It follows that the intention of the General Assembly was to give to municipalities the right to restrict the number of hours per day in which mixed drinks could be sold during the days in which it could legally be sold. The principal purpose of this 1964 amendment was to enlarge the number of kinds of intoxicants which could legally be sold but not to enlarge the time when they could be legally sold. This time was six days, not including Sunday before the amendment and I think it is still six days, in which not one minute of Sunday is included as time within which mixed drinks may be legally sold.

DEEN, Judge, dissenting. *The 1938 Act, the 1946 amendment thereto and the city ordinance thereunder.* 1. The Act of 1938 (Ga. L. 1937-38, Ex. Sess., p. 103; *Code Ann. Ch.* 58-10), known as the "Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors" unquestionably specifically sets forth the public policy of Georgia's prohibiting the sale of any spirituous liquors on Sunday. *Code Ann.* § 58-1060 provides: "Any person who shall sell or offer for sale any spirituous liquors as herein defined on Sundays or election days shall be guilty of a misdemeanor and upon conviction shall be punished as for a misdemeanor as provided in section 27-2506."

*Code Ann.* § 58-1079 provides: "It shall be unlawful to sell any liquor in any of the counties specified by this Chapter between the hours of 12:00 o'clock, midnight, on Saturday night, until the hour of 12:00 o'clock, midnight, on Sunday night, at any time and at any time on election days. It is the purpose and intent of this section to prevent the sale of liquor on Sunday and election days, and any violation of same shall be a misdemeanor, by the buyer and/or the seller."

In addition, *Code* § 26-6105 provides: "Any person who shall keep open a tippling house on the Sabbath day or Sabbath night shall be guilty of a misdemeanor."

Public policy of Georgia is further enunciated in *Code* § 26-6905 providing: "Any person who shall pursue his business or the work of his ordinary calling on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." This is an unequivocal prohibition against selling *any* liquor in *any* of the counties between the hours of twelve o'clock midnight on Saturday night and the hour of twelve o'clock midnight on Sunday night, and that no spirituous liquors shall be sold on *Sunday* or *election days* or on the *Sabbath* or on the *Lord's day.*

In 1964 the General Assembly of Georgia passed an Act which was an amendment to the original "Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors" (Ga. L. 1964, p. 771). This amendment did not directly or by implication repeal any other section of that Act or any other law which prohibits the sale of alcoholic beverages on Sunday. The amend-

atory Act must be construed in relation with the original law and there will be no repeal by implication unless there is a positive repugnancy between the old law and the new. *Mayor &c. of Athens v. Wansley,* 210 Ga. 174 (78 SE2d 478). The 1964 amendment for the first time authorized certain counties and cities, after a favorable referendum, to issue licenses for alcoholic beverages to be sold by the drink for consumption only on the premises (Ga. L. 1964, p. 771). Counties or municipalities succeeding in holding such elections were given power and authority to promulgate rules and regulations relating to the "regulation of *hours* of business." (Emphasis supplied.) The only logical construction of "regulation of hours" would be that counties and municipalities could regulate the hours of sale within the limits set by State laws; that is, the sale of spirituous liquors could be authorized at such time as the general law and public policy did not prohibit the sales. The general law and public policy of Georgia regulates the *days* that sales of spirituous liquors by the drink and the sale of alcoholic beverages by the bottle may be made.

*Code Ann.* § 58-1068 provides: "Nothing in this Chapter shall be construed as giving any person a right to sell spirituous liquors as herein defined, but the manufacture, sale, and distribution of spirituous liquors is declared to be a privilege in this State and not a right. (Acts 1937-38, Ex. Sess., pp. 103, 121.)"

It can not be argued that the General Assembly of Georgia delegated authority to counties and municipalities authorizing them to repeal State law by "rule or regulation" or to adopt ordinances inconsistent with or in conflict with State laws. *Bohannon v. Duncan,* 185 Ga. 840 (196 SE 897).

The State laws dealing specifically with intoxicating liquors are State-wide laws of general application and as such they take precedence over other applicable, though less specific, State laws of general application such as the Sunday closing laws. *Parrish v. Mayor &c. of Savannah,* 185 Ga. 828, 832 (196 SE 721).

Appellants vigorously argue that the General Assembly of Georgia has set up prohibitions against Sunday sales of spirituous liquors in the bottle but that there are no prohibitions against

Sunday sales of alcoholic beverages for consumption on the premises. This would result in rank discrimination. This type construction could well render the 1964 amendment unconstitutional, as prohibiting equal protection and uniformity as provided by the Constitution of the State of Georgia of 1945, particularly Art. I, Sec. I, Par. II (*Code Ann.* § 2-102), and Art. I, Sec. IV, Par. I (*Code Ann.* § 2-401) of the Constitution of the State of Georgia of 1945 as well as the 14th Amendment of the Constitution of the United States. If an Act of the legislature is susceptible of two meanings one of which would render it unconstitutional and the other would render it constitutional, we must give it the latter construction. *CTC Finance Corp. v. Holden,* 221 Ga. 809 (147 SE2d 427).

The city ordinance of Atlanta does not positively provide that authorized licensees may sell alcoholic beverages from twelve o'clock midnight until 2 a.m. on Sunday. The ordinance does provide that persons so licensed shall not engage in sales thereof between the hours of 2 a.m. Sunday and 9 a.m. Monday. The ordinance is silent as to sales from midnight on Saturday until 2 a.m. on Sunday. The only reasonable answer could be that the Atlanta city ordinance could not authorize the activity of subject matter that is prohibited by State law. There is no conflict between the 1938 law and the 1964 amendment or in the ordinance provided thereunder. The Act and its amendment construed together clearly provide a prohibition against liquor sales *on Sunday* giving cities the right only to regulate *hours* within the non-prohibited *days.*

Section 31 (a) of the 1964 amendment added to the original Act a section which contains five provisions numbered consecutively "a" through "e". The provision number (a) contains a proviso, "Anything in this Act to the contrary notwithstanding . . ." wherein certain cities and counties are authorized to license the sale of mixed drinks. No such proviso was inserted by the General Assembly in the other provisions.

While all parts of a statute, including provisos, are to be construed together (*Cherokee Brick &c. Co. v. Redwine,* 209 Ga. 691, 693 (75 SE2d 550)), a proviso refers only to the provision to which it is attached. United States v. McClure, 305 U. S. 472, 478 (59 SC 335, 83 LE 296).

The general rule is stated in 82 CJS 884, Statutes, § 381 (b) as follows: "(1) In General. "A proviso should be construed together with the enacting clause or body of the act, with a view to giving effect to each and to carrying out the intention of the legislature as manifested in the entire act and acts in pari materia. A strict but reasonable construction is to be given to the proviso so as to take out of the enacting clause only those cases which are fairly within the terms of the proviso."

This general rule as applied limits the effect of a proviso to the provision to which it is attached. See Melvin v. Reading, 346 Mich. 348 (ftn. 3) (78 NW2d 181), Farrey v. Bettendorf, (Fla.) 96 S2d 889.

Reason alone would require that a proviso be strictly construed when it is used either in an amendment to a general Act or when it is used to exempt activities from regulatory statutes. It is unreasonable to believe that the General Assembly of Georgia intended to strike down the public policy of Georgia and allow cities and counties to authorize the sale of alcohol to minors, on Sundays, on election days, or within 100 yards of a church or school. The restriction of the proviso used in provision (a) to that provision would of course permit the sale of mixed drinks but subject sales to the restrictions and controls found elsewhere in the Act governing the sale of all alcoholic beverages and spirituous liquors. *With* or *without* the proviso, "anything to the contrary notwithstanding," it is clear that the 1964 amendment does not create an exception or exemption to the controls and restrictions imposed against Sunday, election day, etc., type prohibitive sales.

■ *Sabbath and Sunday.*—Judge Townsend said in *Bolden v. State*, 88 Ga. App. 871, 874 (78 SE2d 368), that the old statute in *Code* § 26-6105, "while archaic in language, is still in force in this State, and forbids the keeping open of tippling houses on the Sabbath."

This case shows that the raid on the premises occurred at about 2 a.m. on Sunday morning and that the defendant was present on the Sunday morning in question, that some liquor was sold shortly thereafter and that he left before the officers arrived. The defendant was convicted in this case and this

case holds 2 a.m. Sunday morning as being sufficient to convict under *Code* § 26-6105.

It must logically follow "as night follows the day" or as day follows night that 2 a.m. Sunday morning is part of the Sabbath day or Sabbath night. We are bound by the Supreme Court of Georgia in the case of *Gunn v. State*, 89 Ga. 341 (3) (15 SE 458) which says, "'Sunday' and 'the Sabbath day' are synonymous in the legislation of Georgia." Where a statute prohibits certain activities on Sunday, Sunday is properly construed to include the entire period between 12 midnight at the end of Saturday and 12 midnight at the beginning of Monday. Gillooley v. Vaughn, 92 Fla. 943 (110 S 653). The Georgia courts have followed this rule of law. *Rose v. State*, 107 Ga. 697 (1) (33 SE 439). The case of Kroer v. People, 78 Ill. 294, supra, specifically held that the phrase "Sabbath day" and "Sabbath night" includes the time between twelve midnight on Saturday and daybreak on Sunday, as well as the time between daybreak Sunday and 12 midnight Sunday.

If, as argued by appellants, 2 a.m. Sunday is not part of the Sabbath or Sunday and Sunday and the Sabbath or Lord's day does not really begin until sunrise, then this court would be saying that a municipality under the previously mentioned applicable laws could permit sales of alcoholic beverages until 3 a.m., 4 a.m. or possibly 5 a.m. or 6 a.m. on Sunday morning. Carrying this reasoning even further, alcoholic beverages could be sold during the period of an Easter sunrise service or during the eclipse of the sun all day Sunday or on a cloudy Sunday dawn or dusk might be simulated at various periods of the day. This is not the law in Georgia, Florida or Illinois. Certainly this court would not consider following the law in South Carolina and Connecticut which permits the sitting of a court and the rendering of a valid judgment on Sunday. It is the writer's opinion that the public policy in Georgia is based on the premise outlined in *Berta v. State*, 223 Ga. 267, 268 (154 SE2d 594): "It is contended that the statute is discriminatory because it selects the Christian Sunday as the Sabbath day and discriminates against those religious groups that use Saturday as the Sabbath day. Historically the requirements of our law forbid-

ding labor on Sunday, and similar laws of other states, were based on religious beliefs in regard to the sanctity of the Sabbath day as observed by people of the Christian faith, and this background is reflected in our statute, which refers to Sunday as 'the Lord's day.' It is now generally held that the authority to enact and enforce such laws rests within the police power of the State."

Much of this historical background is based on the same bedrock principles outlined by Justice Brainard in the dissenting opinion in the case of Fox v. Abel, 2 Conn. 541, 553, who said "The questions are, what is the *Christian Sabbath?* And, What, in *Connecticut,* is the *Sabbath?* Whether the *Christian Sabbath* comprehends one seventh part of time, one seventh part of a week; and if it does, whether the *Sabbath* of *Connecticut,* is, by law the same?

"That the *Christian Sabbath* consists of one seventh part of time, the religious observance of which is of moral and perpetual obligation on the consciences of all professing *Christians,* I think, there can be no doubt.

"In six days the Lord made the heavens and the earth, and rested the seventh. On the completion of this stupendous work of Omnipotence, in six days, God blessed the seventh, and sanctified it.

"In reference to time, God, to declare, by his divine command, what portion should be observed as holy, divided it into days, each consisting of an *equal number of hours.* [Emphasis supplied.] On the seventh day, God rested from his work, and blessed and sanctified it.

"Did this seventh day, which God blessed and sanctified, consist of the same portion of time, as each of the six preceding days, in which, according to language adapted to our comprehension, God is said to have made the heavens and the earth?

"Whoever reads and believes the concise and sublime account given by *Moses* of this astonishing work of creation, cannot doubt that one seventh part of time, one day in seven, containing twenty-four hours, was blessed and sanctified—a *Sabbath,* holy unto the Lord.

"This is expressly confirmed in the decalogue. 'Six days shalt

thou labour, but the seventh is the *Sabbath* of the Lord, thy God; in it thou shalt not do any work.'

"Can it be supposed, that the Almighty, declaring his commandment from *Sinai* and prescribing the same order and distribution of time, which he did in the creation, intended, that this seventh day *should be wanting in measure, and destitute of proportion?* [Emphasis supplied.] Indeed, on this point, *Exodus* xxiii. 10-12, I think, is conclusive. 'Six years shalt thou sow thy land, &c. but the seventh thou shalt let it rest,' &c. 'Six days thou shalt do thy work; and on the seventh, thou shalt rest.' Can there be a question, but that this seventh year was an *entire* year; and this seventh day, an *entire* day?

"If this be the *Jewish,* what is the *Christian Sabbath?*

"On the authority of the resurrection of our *Saviour,* the day of the Sabbath, in the view of *Christians,* generally, is altered; but the portion of time not varied: the *Christian Sabbath,* in point of duration, is the same as the *Jewish.* . .

"On the whole, I take the *Sabbath,* or *Lord's day,* to be, in *Connecticut,* a natural day, consisting of twenty-four hours."

While there should be an unbending separation of Church and State, we cannot ignore the fact that the representatives of the people (General Assembly) have enacted a multiplicity of Acts affecting activity on Sunday and the Sabbath. The notion is advanced that the term "Sabbath" is ambiguous and vague and as a legal term has no place in a statute. Throughout Georgia's history statutes have been passed, even as current as April 10, 1968, using this vague term "Sabbath." The many statutes are in the books. They are in existence. This court is powerless to strike down the Sunday or Sabbath laws. Only the General Assembly can repeal them. Only the Supreme Court of Georgia or the Supreme Court of the United States can rule them unconstitutional. Our court must uphold and recognize the Sunday-Sabbath statutes until such time as they are repealed or overruled. *Hennington v. State,* 90 Ga. 396, 398 (17 SE 1009), affirmed by the Supreme Court of the United States, 163 U. S. 299 (16 SC 1086, 41 LE 166); McGowan v. Maryland, 366 U. S. 420, 444 (81 SC 1101, 6 LE2d 393); Braunfeld v. Brown, 366 U. S. 599 (81 SC 1144, 6 LE2d 563); *Cooper v. Rollins,* 152 Ga. 588 (2)

(110 SE 726, 20 ALR 1105). *Hughes v. Reynolds,* 223 Ga. 727 (157 SE2d 746), is not applicable to this factual situation. The case sub judice is controlled by *Berta v. State,* supra, and this court is bound by the holding therein. ". . . [I]n seeking a sound construction we must look, not to what we would prefer, but solely to what sayeth the law." *Hood v. First National Bank,* 219 Ga. 283, 286 (133 SE2d 19). The crux of the appellants' argument is that in March of 1964 (*Code Ann.* § 58-1083) an amendment was passed superseding or repealing the Sunday-Sabbath (Election Day) prohibitions of liquor sales. On June 24, 1964, (approximately 90 days later) *Code Ann.* § 34-1937 (Ga. L. 1964), was passed: "*34-1937. Sale of alcoholic beverages on primary or election days prohibited.*—Any person who shall sell or buy or offer for sale any alcoholic beverages on primary or election days shall be guilty of a misdemeanor. (Acts 1964, Ex. Sess., pp. 26, 196.)"

And again this year, 1968, when the General Assembly adopted the new Criminal Code, most of the Sunday-Sabbath-Lord's day prohibition against certain liquor sales provisions were left intact, in toto, in the same identical unambiguous wording clearly showing the intent of the legislature: "*26-9906. Tippling Houses, Keeping Open on Sabbath.* Any person who shall keep open a tippling house on the Sabbath day or Sabbath night shall be guilty of a misdemeanor." "*26-9908. Violating the Sabbath Day.* Any person who shall pursue his business or the work of his ordinary calling on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor."

Anything to the contrary notwithstanding these statutes were not repealed in 1964, they have been and still are the law of Georgia and according to the new Criminal Code (advanced by the crime commission and State Bar) will continue to be the law in the future.

Sunday, the Sabbath, or Lord's day is a complete day, a natural day, consisting of twenty-four hours as Tuesday, Wednesday or any other day of the week. We must not short-change the amount of time or hours of any day, including Sunday. Assuming arguendo that Sunday is stripped of all religious connotation, as in *McGowan,* supra, Sunday is still a complete day consisting of twenty-four hours.

The trial court correctly sustained general demurrers to the petition and dismissed the same and I would affirm the judgment of the trial court.

I am authorized to state that Presiding Judge Jordan concurs in this dissent, and that Judge Pannell concurs in its result.