William Patrick LaBROSSE, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. C2–86–93.

Court of Appeals of Minnesota.

May 27, 1986.

Gail Murray, Eliason & Murray, Hibbing, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and CRIPPEN, and PARKER, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant refused to take a urine test which an officer required pursuant to Minn.Stat. § 169.123, subd. 2a (1984). The Commissioner of Public Safety revoked appellant's driving privileges, and he petitioned for judicial review. The trial court sustained the revocation. We affirm.

## FACTS

On August 12, 1985, Deputy Sheriff Joseph Clifford Stewart arrested appellant William Patrick LaBrosse for driving while under the influence and for an open bottle violation. As Stewart was talking to appellant, he saw part of a baggie sticking out of appellant's shirt. Stewart removed it and observed it contained what he believed to be marijuana and two packages of cigarette papers. Stewart also arrested appellant for possession of marijuana in a motor vehicle.

Stewart brought appellant to the Hibbing Police Department, began a video tape, and read appellant the implied consent advisory. Stewart offered appellant only a urine test. He did so because he believed, based on the contents of the baggie and the cigarette papers, appellant had been smoking marijuana as well as drinking. He believed that neither the blood nor the breath test could detect the presence of THC (tetrahydrocannabinol) that only a urine test would provide.

Appellant refused the test. The Commissioner revoked his driving privileges and on judicial review the trial court sustained the revocation.

## ISSUE

Must an officer who requires a urine test for controlled substances under Minn.Stat. § 169.123, subd. 2a (1984) offer the driver the choice of taking a blood or urine test pursuant to Minn.Stat. § 169.123, subd. 2(c) (Supp.1985)?

## ANALYSIS

The trial court found Stewart had reasonable and probable grounds to believe appellant's impairment was caused in part by marijuana, a controlled substance not subject to testing by a blood or breath test. It further found Stewart required only a urine test and did not offer either a blood or breath test, and appellant refused to submit to testing after being properly ad-

vised. Appellant does not challenge these findings.

Instead, appellant argues under Minn. Stat. § 169.123, subd. 2(c) when the officer offered him a urine test he was also required to offer him the choice of a blood or urine test and because the officer failed to do so the revocation of his driving privileges should be rescinded. Appellant contends *Meyers v. Commissioner of Public Safety*, 379 N.W.2d 219 (Minn.Ct.App. 1985), requires the revocation of his driving privileges should be rescinded.

Both Minn.Stat. § 169.123, subds. 2a and 2(c) must be examined. Subdivision 2a provides:

Notwithstanding subdivision 2, if there are reasonable and probable grounds to believe there is impairment by a controlled substance which is not subject to testing by a blood or breath test, a urine test may be required even after a blood or breath test has been administered.

Minn.Stat. § 169.123, subd. 2a (1984).

Appellant contends there is no special exception for controlled substances by making them subject only to the requirements set out in subdivision 2a. He argues the requirements of subdivision 2 are applicable to all tests required, whether alcohol or a controlled substance. In particular, he argues under subdivision 2(c), he should have been offered the choice between a blood or urine test. If his first choice was a urine test, it could have been used to test for alcohol and controlled substances. If a blood test was chosen, a urine test could also be required.

We disagree. Minn.Stat. § 169.123, subd. 2(c) (Supp.1985) provides:

The peace officer who requires a test *pursuant to this subdivision* may direct whether the test shall be of blood, breath, or urine. However, if the officer directs that the test shall be of a person's blood or urine, the person may choose whether the test shall be of his blood or urine.

(Emphasis added). The officer did not request the test pursuant to subdivision 2(c); he requested it pursuant to subdivision 2a.

Subdivision 2(c) does not apply to a test under subdivision 2a, and *Meyers* is consequently not controlling.

The language of subdivision 2a specifically states a urine test may be required notwithstanding subdivision 2. The word "notwithstanding" has been interpreted to mean "in spite of" or "without prevention or obstruction from or by." *State ex rel. Morse v. Christianson*, 262 Wis. 262, 269, 55 N.W.2d 20, 24 (1952). This means the urine test may be required in spite of language in subdivision 2 regarding other tests which may be offered.

Subdivision 2a was enacted in 1978 and has not been amended. 1978 Minn.Laws ch. 727, § 3. The legislature also amended the provision regarding the choice of tests:

Any person may decline to take a direct blood test and elect to take either a breath or urine test, whichever is available and offered. No action may be taken against the person for declining to take a direct blood test unless either a breath or urine test was available and offered.

1978 Minn.Laws ch. 727, § 3 (codified at Minn.Stat. § 169.123, subd. 2 (1978)). In 1984, that provision was removed from subdivision 2 and placed in new subdivision 2(c) and amended to its present form. 1984 Minn.Laws ch. 622, § 10 and ch. 655, art. 2, § 18. The legislature had the opportunity to change subdivision 2a when it amended subdivision 2. However, it did not amend subdivision 2a to provide a person should be given a test choice. The legislative history indicates a test required pursuant to subdivision 2a is not subject to an alternative test under subdivision 2(c).

Subdivision 2a provides a urine test may be required "even after a blood or breath test has been administered." This allows an officer who requires a driver to submit to a test pursuant to subdivision 2(c) to require a urine test if the officer suspects the person is under the influence of a controlled substance. It does not require a blood or breath test as a precondition to a urine test under subdivision 2a.

## DECISION

The trial court correctly determined the officer properly offered appellant only a urine test when appellant was required to take the urine test to detect the presence of a controlled substance under Minn.Stat. § 169.123, subd. 2a.

Affirmed.